## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY BETHEL                                    :
  3047 Vista Street N.E.                      :
  Washington, D.C. 20018                   :
                                    :
              Plaintiff,                :          Case No. 1: 20 cv 01940 RC
        v.                                       :
                                      :
JOSE RODRIGUEZ                            :
    POLICE OFFICER BADGE 7114       :
    5TH DIST. 1805 Bladensburg Rd. N.E.   :
  Washington, D.C.  20002                  :
                                    :
METROPOLITAN POLICE DEPARTMENT
DISTRICT OF COLUMBIA              :
                                    :
  Karl Racine Attorney General            :
  441 4th Street N.W.                          :
  Washington, D.C. 20001                  :
                                    :
NELSON BENTON                          :
  Asset protection specialist               :
  Home Depot                               :
  901 Rhode Island Ave. N.E.            :
  Washington, D.C. 20018                 :
THE HOME DEPOT USA INC.         :
  A DELAWARE CORPORATION INC   :

    Defendants.                             :

1

<u>PLAINTIFFS OPPOSITION TO THE DISTRICT OF COLUMBIA DEFENDANTS',
DISTRICT OF COLUMBIA/METROPOLITAN POLICE DEPARTMENT[1] MOTION TO
DISMISS THE PROPOSED SECOND AMENDED COMPLAINT FILED SEPTEMBER 3,
2020</u>

Plaintiff Larry Bethel, through counsel, here opposes the motion of Defendants District of

Columbia, Metropolitan Police Department (collectively the "District Defendants") for dismissal

of the second proposed amended complaint. It should be noted that the District of Columbia

Defendants have filed their responsive pleading to the proposed second amended complaint

before the Court has ruled on Plaintiff Bethel's proposed second amended complaint.  Plaintiff

---

[1] "ECF Doc. 11-2" refers to the docket of the instant case, filed on September 3, 2020. "¶" is the
symbol for a paragraph reference, and P.1 of 68 is the page reference, Defendant District of
Columbia is represented by the Office of the Attorney General who represents the Metropolitan
Police Department. Plaintiffs proposed second amended complaint clearly establishes that the
District of Columbia, as a municipal corporation, is responsible for the Metropolitan Police
Department and its operations. The caption of Plaintiffs proposed second amended complaint
carries as Defendants: "Metropolitan Police Department, District of Columbia. Moreover
Plaintiffs proposed second amended complaint identifies the following: Defendant Jose
Rodriguez ("Rodriguez") Metropolitan Police Department Officer badge number 714 is a citizen
of the United States and can be reached at MPD station 5TH District, 1805 Bladensburg Rd. N.E.
Washington, D.C. 20002. ECF, P-3, "¶" 6.  At all relevant times, Defendant Rodriguez was a
duly licensed police officer and was employed as a patrolman by Defendant District of Columbia
in the District of Columbia Metropolitan Police Department ("MPD") ECF, P-3, "¶" 7.  At all
relevant times, Defendant Rodriguez was an employee acting under the color of law within the
scope of his employment with the District of Columbia and Metropolitan Police Department
ECF, P-3, "¶" 8.  Defendant Rodriguez is being sued in his official capacity and in his individual
capacity ECF, P-3, "¶" 9.   Defendant District of Columbia is a municipal corporation organized
pursuant to the laws of the United States, with the authority to sue and be sued, and the local
government for the territory constituting the permanent seat of the federal government of the
United States ECF, P-3, "¶" 10.  At all relevant times, Defendant District of Columbia was
responsible for the operation of the Metropolitan Police Department as a department of the local
government ECF, P-4, "¶" 11.  At all relevant times, Defendant District of Columbia was
responsible for the policies, procedure, rules, regulations, and customs set forth and utilized for
the operation of the Metropolitan Police Department ECF, P-4, "¶" 12.  Proposed Second
Amended Complaint pg. 50 of 64 12-309 letter dated January 10, 2020 [letter names District of
Columbia as Defendant], proposed second Amended Complaint pg. 61 of 64 letter from
Defendant District of Columbia, January 15, 2020,  [acknowledging receipt of 12-309 letter from
Plaintiff],

Bethel filed the proposed second amended complaint on September 3, 2020 and the District of Columbia Defendants filed the Motion to dismiss the proposed second amended complaint on September 4, 2020. For the reasons that follow, the motion to dismiss is without merit and should be denied.

<div align="center">FACTS</div>

1.  Plaintiff Larry Bethel owns gold colored Toyota bearing DC tags of ES4837 and at all times relevant to this matter, he did not loan his car to anyone. [2] On July 19, 2019, at approximately 9:15 A.M. Plaintiff Bethel visited the Home Depot retail store located 901 Rhode Island Ave. N.E. Washington D.C.[3] Plaintiff Bethel had recently finished his shift at his job with the Washington Hospital Center.[4] Plaintiff Bethel is a valued and trusted employee at the hospital and is a working dynamo who often worked long hours, prior to July 19, 2019. [5] Plaintiff Bethel parked his vehicle in the parking lot provided by Defendant Home Depot near the entrance to the retailer.[6]

2.  Moments after Plaintiff Bethel entered Home Depot he was brought under electronic surveillance by Defendant Benton.[7] Plaintiff Bethel did nothing unusual and was not acting in

---

[2] Proposed second Amended Complaint ¶ 16
[3] *Id.* ¶ 16
[4] *Id.* ¶ 16

[5] *Id.* ¶16

[6] *Id.* ¶16

[7] *Id.* ¶17

any way to attract the attention of Defendant Benton.[8] Plaintiff Bethel was monitored by Defendant Benton from a location inside the Home Depot. [9]

3.   Plaintiff Bethel went to the section of the store where he found air conditioners on display for sale.[10]  At approximately 9:17 A.M. He selected a window room air conditioner and placed the same inside a shopping cart.[11] He went to the section of the store for payment and after paying for the unit noticed it was damaged.[12]  He pointed that out to the cashier a "Tanya" and she directed him to get another.[13] (See **Exhibit 2**, See **Exhibit 3, 3A (Exhibits 2, 3, 3A** are the sales receipt and the bank statement, respectively, of Plaintiff Bethel, that reflect the transaction on July 19, 2019). (See ECF 11-2 pg. 47, 48, 49 of 68)

4.  Plaintiff Bethel did not remove the damaged air conditioner from the store or otherwise leave the store.[14]  This first transaction occurred at approximately 9:22 A.M.[15] (See ECF 11-2 pg. 47of 68)

---

[8] *Id.*  ¶17

[9] *Id.*  ¶17

[10] *Id.*  ¶18

[11] *Id.*  ¶18

[12] *Id.*  ¶18

[13] *Id.*  ¶18

[14] *Id.*  ¶19

[15] *Id.*  ¶19

Plaintiff Bethel did as cashier "Tanya" directed and returned to the section of the store for air conditioners and selected another unit (the second air conditioner) which was not damaged, this occurred at approximately 9:31 A.M.,[16] (See **Exhibit 1**) (See ECF 11-2 pg. 46 of 68) and returned to cashier "Tanya" who observed the second air conditioner which was the same as the first, but undamaged, and she advised Plaintiff Bethel that he was free to go.[17] The first damaged air conditioner remained with cashier "Tanya." [18]

5.    While in the store Plaintiff Bethel was continually monitored by Defendant Benton by video and audio recording. [19]  Plaintiff Bethel, under the continuing eye of Defendant Benton, was observed to use his visa card to pay for the first air conditioner.[20]  (See **Exhibit 2**, See **Exhibit 3, 3A (Exhibits 2, 3, 3A** are the sales receipt and the bank statement of Plaintiff Bethel respectively, that reflect the transaction on July 19, 2019, the amount and the time of transaction, that is also consistent with **Exhibit 1**) (See ECF 11-2 pg. 46, 47, 48, 49 of 68)

. Defendant Benton watched all of these events unfold while Plaintiff Bethel was in the store in real time.[21] Defendant Benton did not leave his post until Plaintiff Bethel left the store with the second air conditioner, a replacement for the first, which remained in the store with cashier "Tanya," a Home Depot USA, Inc. employee.[22]

---

[16] *Id.*  ¶19

[17] *Id.*  ¶19

[18] *Id.*  ¶19

[19] *Id.*  ¶20

[20] *Id.*  ¶20

[21] *Id.*  ¶20

[22] *Id.*  ¶20

6. Plaintiff Bethel, under the continuing eye of Defendant Benton, was observed to return to cashier "Tanya" with the second undamaged air conditioner, which was inspected by cashier "Tanya. [23]  She satisfied herself that the air conditioner Plaintiff Bethel presented to her before he left the store was the same size, shape, color, of the first air conditioner that he paid for that had been discovered damaged.[24]   Once inspected Plaintiff Bethel walked out of the store followed by Defendant Benton. [25] (See ECF 11-2 pg. 50 of 68)    Inexplicitly, Defendant Benton did not detain Plaintiff Bethel nor prevent him from leaving the store property.[26]  Defendant Benton let Plaintiff leave the area only getting enough information from his car and his general description to further this flawed investigation.[27]  (See ECF 11-2 pg. 50 of 68)

7.    Plaintiff Bethel was issued a sales receipt memorializing his purchase of a window air conditioner. [28]  See **Exhibit 2** See **Exhibit 3, 3A** (See ECF 11-2 pg. 47, 48, 496 of 68)

8.  The one and only sales receipt that was issued to Plaintiff Bethel at the register carried the following notations of proof and authenticity:  The receipt bears the Home Depot logo, with the stores address, the date of the transaction, July 19, 2019, and approximate time, 9:22 A.M., the name of the cashier, "Tanya," last four digits of the visa card used by Plaintiff Bethel ...7521,

---

[23] *Id.*  ¶21

[24] *Id.*  ¶21

[25] *Id.*  ¶21

[26] *Id.*  ¶21

[27] *Id.*  ¶21

[28] *Id.*  ¶22

identification of merchandise 084691830689 AEL06LX <A> Total $200.00. [29] (See ECF 11-2 pg. 47 of 68)

9.   Defendant Benton, who watched Plaintiff Bethel during the entire time that Plaintiff Bethel was in the Home Depot store, would later report to Defendant Rodriguez: "W1 [Defendant Benton] (asset protection specialist for Home Depot) was conducting routine surveillance of the sales floor when he observed S1 [Plaintiff Bethel] select a Window A/C unit and place it into a shopping cart. [30] (See ECF 11-2 pg. 50 of 68)  S1 then was observed walking towards the main entrance where he passes all points of sale and exits the store with the stolen merchandise. [31] (See ECF 11-2 pg. 50 of 68)  W1 responded outside and observed S1 enter a gold colored Toyota bearing DC tags of ES4837."  See **Exhibit 4** (See ECF 11-2 pg. 50 of 68)

 Defendant Benton did not stop Plaintiff Bethel or otherwise notify him of his, Defendant Benton's suspicions. [32]

10.   Defendant Benton would also report to Defendant Rodriguez on July 20, 2019, whom he knew was applying for an arrest warrant for Plaintiff Bethel, the following false claim, "that Plaintiff Bethel had stolen the air conditioner." [33]  (See ECF 11-2 pg. 50 of 68)  Defendant Benton knew this to be false as the true facts should have been fresh in his mind as the event occurred one day before his statement.[34] (See ECF 11-2 pg. 50 of 68) Defendant Benton also

---

[29] *Id.*   ¶22

[30] *Id.*   ¶23

[31] *Id.*   ¶23

[32] *Id.*   ¶23

[33] *Id.*   ¶24

[34] *Id.*   ¶24

had the video footage available for review but was determined to put forth a false assertion about Plaintiff Bethel stealing the air conditioner.[35]

11. When Defendant Rodriguez interviewed Defendant Benton, he Defendant Rodriguez, negligently failed to investigate the evidence provided by Defendant Benton with reference to the false allegation that Plaintiff Bethel stole merchandise from Defendant Home Depot USA Inc. on July 19, 2019.[36]  Defendant Rodriguez applied for an arrest warrant for Plaintiff Bethel without reviewing the video tape of Plaintiff Bethel allegedly stealing the air conditioner. Defendant Rodriguez did not advise the prosecutor or the Judge who signed the warrant for the arrest of Plaintiff that Plaintiff Bethel had a receipt for the purchase of the air conditioner. Defendant Rodriguez advised the prosecutor and the Judge that Plaintiff Bethel stole the air conditioner.  This was patently false.  Finally after investigation by Plaintiff Bethel prior to filing his lawsuit the alleged served "arrest warrant" for Plaintiff Bethel could not be found.  The alleged served "arrest warrant" was not lodged with the Superior Court District of Columbia Special Proceedings section.

12.  The MPD maintains written policies and procedures for the obtaining and service of arrest warrants to which Defendant Rodriguez and all other Department employees had and have a duty to abide.[37]

13.  The MPD's written internal policies and procedures provide that arrest warrants shall only be issued and served based on probable cause that would lead a reasonable, prudent, and cautious police officer to believe a crime has been committed.[38]

---

[35] *Id.*  ¶24

[36] *Id.*  ¶ 31

[37] *Id.*  ¶32

[38] *Id.*  ¶33

14.   The MPD's written internal policies and procedures also require that each and every member of the Department who applies for a warrant must corroborate the facts stated in an affidavit submitted in support of the application and determine the accuracy, validity, and truthfulness of all information presented.[39]

15.   Defendant Rodriguez, acting as an employee for Defendant District of Columbia, in his capacity as a police officer for the District of Columbia, owed a duty to Plaintiff Bethel to perform his police duties in accordance with the MPD's internal written policies and procedures and without violating his constitutional rights under the Fourth Amendment of the United States Constitution to be secure from state actions that result in unlawful arrests made without probable cause and/or based on false affidavits.[40]

16.   Defendant Rodriguez breached his duties to Plaintiff Bethel by subjecting him to an unlawful arrests made without probable cause and/or based on a false affidavits.[41]

17.   At the time Defendant Rodriguez committed this unlawful conduct towards Plaintiff Bethel, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.[42]

18.   After Defendant Rodriguez interviewed Defendant Benton Defendant Rodriguez should have reviewed the surveillance tape in its entirety.[43]  After that review Defendant Rodriguez

---

[39] *Id.*   ¶34
[40] *Id.*   ¶35
[41] *Id.*   ¶36
[42] *Id.*   ¶37
[43] *Id.*   ¶40

knew, or should have known, that the video did not corroborate the allegations that Defendant

Benton had asserted against Plaintiff Bethel.[44]

19.   Defendant Rodriguez reported his investigation to a superior Officer Araz Alali badge

number 8984 who approved the request for an arrest warrant for Plaintiff. [45] This procedure is

memorialized in the internal narrative section of form MPD CCN 19127017. [46] See **Exhibit 4**

(See ECF 11-2 pg. 50, 57, 58, of 68)

20.   Upon information and belief, between on or about July 20, 2019 and August 20, 2019,

Defendants District of Columbia was able to obtain an "arrest warrant" for Plaintiff Bethel,

bearing the following numbers 2019CCW004297.[47]   The facts supporting that affidavit for the

arrest warrant was based upon false statements.[48]

21.   Plaintiff Bethel was unaware of the Defendants activities with reference to obtaining an

arrest warrant for him, from July 20, 2019 thru August 20 2019.[49]   However, Plaintiff Bethel

became shockingly aware, on August 20, 2019, when Defendants District of Columbia appeared

at Plaintiff's home 3047 Vista Street N.E. Washington, D.C., at 7:00 A.M. in the morning to

arrest him.[50]

22. Defendant District of Columbia appeared at Plaintiff's door and after a loud knock and a full

throated, "Open the door police."[51]   Witness 1 who is a 90 year old relative of Plaintiff Bethel

answered the door.[52]

---

[44] *Id.*   ¶40
[45] *Id.*   ¶41
[46] *Id.*   ¶41
[47] *Id.*   ¶42
[48] *Id.*   ¶42
[49] *Id.*   ¶43
[50] *Id.*   ¶43
[51] *Id.*   ¶44
[52] *Id.*   ¶44

23.  Witness 1 related that: at approximately 7:30 A.M. Witness 1 was aroused by a loud knocking at the door at 3047 Vista Street N.E.[53]  Witness 1 answered the door and found armed, uniformed MPD officers were at the door.[54]

24.  The police had arrived in three cars which were parked in front of Witness 1's home.[55]  The officers demanded to know if Plaintiff, Larry Bethel was home.[56] The officer announced that they had an arrest warrant for Plaintiff for stealing.[57]

25.  Witness1 repeated what the officers told him about Plaintiff as he was shocked about the arrest warrant and the nature of the warrant;[58] as it was first announced by an Officer Harmon who appeared to be in charge.[59]

26.  Witness 1 saw that the officers had guns, three were on Witness'1 front porch and another group was on the sidewalk.[60] The officers on the sidewalk were paying attention to the front door and Witness 1.[61]

27. Witness 1 remembers that the some of the Officers walked down the steps when they saw someone who turned out to be Witness 2.[62]  Witness 2 was stopped and confronted by the officers.[63]

---

[53] _Id._   ¶45
[54] _Id._   ¶45
[55] _Id._   ¶46
[56] _Id._   ¶46
[57] _Id._   ¶46
[58] _Id._   ¶47
[59] _Id._   ¶47
[60] _Id._   ¶48
[61] _Id._   ¶48
[62] _Id._   ¶49
[63] _Id._   ¶49

28. Witness 2 advised the officers when asked if he knew Plaintiff,[64]  Witness 2 answered in the affirmative.[65]  Officer Hamon or another officer told Witness 2 that they were looking for Plaintiff Bethel because they had an arrest warrant for him for theft.[66]

29.  Officer Hamon gave Witness 1 a business card for Plaintiff Bethel with a telephone number on it.[67]  (See ECF 11-2 pg. 51 of 68) The card listed another officer's name in print and Officer Harmon's name in writing.[68] (See ECF 11-2 pg. 51 of 68)  The number for Officer Harmon was written on the card as well.[69]  See **Exhibit 5, 5A** (See ECF 11-2 pg. 51, 52, of 68)

30.  Plaintiff Bethel was alerted by Witness 1 and other family that he was wanted by the police, who had a "warrant" for his arrest.[70]  Plaintiff was frantic with worry.

31.  Plaintiff Bethel attempted to reach Off. Harmon but was not successful.[71]  Plaintiff Bethel finally was able to reach Off. Harmon who advised Plaintiff that there was an arrest warrant out for Plaintiff, for a charge of theft.[72]  Plaintiff protested and advised that he had not stolen anything.  However, Plaintiff Bethel agreed to turn himself in to the police based upon the outstanding "arrest warrant."[73]

32.  On August 21, 2019, at approximately 12:28 A.M. the Plaintiff Bethel appeared at the 5th District Police Station on Bladensburg Rd. N.E.  Washington, D.C.[74]  Plaintiff Bethel consistent

---

[64] *Id.*  ¶50
[65] *Id.*  ¶50
[66] *Id.*  ¶50
[67] *Id.*  ¶51
[68] *Id.*  ¶51
[69] *Id.*  ¶51
[70] *Id.*  ¶52
[71] *Id.*  ¶53
[72] *Id.*  ¶53
[73] *Id.*  ¶53
[74] *Id.*  ¶54

with his conversation with Off. Harmon was turning himself in with reference to the "arrest warrant" that Off. Harmon said was out for him.[75]

33.   Plaintiff Bethel surrendered to an Officer Dennis who processed him and directed questions to him.[76]  Plaintiff Bethel was kept at the police station for investigation and was not free to leave on his own accord.[77]  Plaintiff Bethel was placed on the detention journal at 5th District with reference to the "arrest warrant."[78]  Plaintiff Bethel was fearful and not free to leave the station.[79]  At the time of the initial investigation on July 19, 2020, Defendant Rodriguez was aware that Plaintiff Bethel had no police record and although chronologically aged Plaintiff Bethel had no experience with the police.[80] Plaintiff Bethel was questioned by the Police but not *Mirandized, Miranda v. Arizona,* 384 U.S.436 (1966), before the questioning.  Plaintiff Bethel was never presented with any documents charging him with a crime; however, the police kept him secured while they searched for the so-called "arrest warrant" that Defendant Rodriguez had obtained for his arrest.  Plaintiff Bethel was finally released from the police station with no further action towards prosecution.  No "arrest warrant" or record of the same was ever produced.  Plaintiff Bethel was warned that the "arrest warrant" could be served on him at ant time. When the police appeared at the home of Plaintiff Bethel in the early morning hours of August 20, 2019, Witness 1 reported that experience was disquieting and disturbing.[81]  Had Plaintiff been home he would have most assuredly been touched by the police, frisked,

---

[75] *Id.* ¶54
[76] *Id.* ¶55
[77] *Id.* ¶55
[78] *Id.* ¶55
[79] *Id.* ¶55
[80] *Id.* ¶55
[81] *Id.* ¶55

monitored with great care in police presence and handcuffed.[82] Plaintiff would have been lead away in handcuffs and placed in a police car for transport.[83]

Defendant Rodriguez knew or should have known that Plaintiff Bethel would be pursued by the warrant squad. These officers are trained to handle and process fugitives and those wanted with legitimate arrest warrants.[84] To successfully plead assault a litigant must be able to show that a defendant intentionally created "an imminent apprehension of ...a harmful or offensive ...contact and that the plaintiff or litigant experienced such an apprehension. *Jackson v. District of Columbia,* 412 A.2d 948,956 (D.C. 1980) *accord Evans-Reid v. District of Columbia,* 930 A.2d 930,937 (D.C. 2007). Thus, if a defendant acts knowing with substantial certainty that his action will cause a third party to create the apprehension of imminent harmful or offensive contact in another, he is liable for assault.[85] This apprehension is more pronounced when the target of the arrest warrant knows he did nothing wrong and the police know that the alleged arrest warrant is void as no probable cause existed for its issuance.[86]

34. Officer Harmon, Defendant Rodriguez, nor any other MPD appeared at the 5th District to take the Plaintiff into custody on August 21, 2019 and no copy of the arrest warrant was ever located or served on Plaintiff Bethel.[87] However, during Plaintiff's investigation for this civil suit form MPD CCN 19127017 was discovered indicating Plaintiff Bethel's case had been "Cleared by arrest [on] (August 21, 2019)".[88] See **Exhibit 4** (See ECF 11-2 pg. 50 of 68)

---

[82] *Id.*  ¶55
[83] *Id.*  ¶55
[84] *Id.*  ¶55
[85] *Id.*  ¶55
[86] *Id.*  ¶55
[87] *Id.*  ¶56
[88] *Id.*  ¶56

Plaintiff was advised that he could leave the police station but should be wary as arrests warrants could remain in the system.  Plaintiff Bethel was released after an entry was made on the "Detention Journal."[89]  No arrest warrant was ever produced charging Plaintiff Bethel with anything.[90]

35.  Plaintiff Bethel sought legal advice about this ordeal and has investigated this matter.  On January 10, 2020, Plaintiff filed a 12 D.C. Code 309 notice with reference to this matter.[91]  See **Exhibit 6** (See ECF 11-2 pg. 53, 54 of 68); Letter dated January 15, 2020 from Defendant District of Columbia confirming receipt of the 12-309 letter.[92] See **Exhibit 7**(See ECF 11-2 pg. 64 of 68)**;** letter dated January 30, 2020, from Defendant District of Columbia denying liability and confirming the "MPD officers had a valid warrant..."[93] See **Exhibit 8** (See ECF 11-2 pg. 65 of 68)

36.  On October 15, 2019, an Investigator for Plaintiff Bethel's made a check of the District of Columbia Superior Court Special Proceeding Office looking for the arrest warrant for Plaintiff Bethel.

37.  On November 6, 2019, the Investigator's search Court records again, using the biographical information of Plaintiff Bethel to include: birth date, social security number, home address; the investigator's search revealed no arrest warrant with affidavit, under any number, could be found for Plaintiff Bethel.

38.  Plaintiff Bethel's investigation also revealed that any legally issued arrest warrant for any individual in the District of Columbia must be:

---

[89] *Id.*   ¶56
[90] *Id.*   ¶56
[91] *Id.*   ¶57
[92] *Id.*   ¶57
[93] *Id.*   ¶57

(a)(1) A judicial officer may issue a warrant for the arrest of any person upon a sworn complaint which states facts constituting an offense over which the judicial officer has jurisdiction for trial or preliminary examination, and establishing probable cause to believe that the person committed the offense…

(b)(1) An arrest warrant shall be signed by the judicial officer and shall state or contain the name of the issuing court, the date of issuance of the warrant, a description of the offense charged, and the name of the person to be arrested or, if his name is unknown, any name or description by which he can be identified with reasonable certainty. It shall command that the person be arrested and brought before the issuing court or officer…

(d) Each complaint shall be made in writing upon oath or affirmation. Except for good cause shown, no warrant shall be issued unless the complaint has been approved by an appropriate prosecutor…

23 D.C. Code 561 (2001)

39.  The investigation by Plaintiff Bethel, uncovered the following procedure required after an arrest warrant has been executed:

23 D.C. Code 562 (2001)

(a)(1) A warrant issued pursuant to this subchapter shall be executed by the arrest of the person named. The officer need not have the warrant in his possession at the time of the arrest, but upon request he shall show the warrant to the person as soon as possible. If the officer does not have the warrant in his possession at the time of the arrest, he shall inform the person of the offense charged and of the fact that a warrant has been issued…

(b)(1) The officer executing a warrant shall make return thereof to the judicial officer before whom the person is brought for preliminary examination…

(c)(1) A law enforcement officer within the District of Columbia making an arrest under a warrant issued pursuant to this subchapter, making an arrest without a warrant, or receiving a person arrested by a special policeman or other person pursuant to § 23-582, or a designated civilian employee of the Metropolitan Police Department receiving a person arrested by a law enforcement officer within the District of Columbia or a special policeman or other person pursuant to § 23-582, shall take the arrested person without unnecessary delay before the court or other judicial officer empowered to commit persons charged with the offense for which the arrest was made…

40.  Plaintiff Bethel has never been presented with an "arrest warrant" consistent with the District of Columbia Code provisions above and questions whether such a warrant ever existed.

## STANDARD OF REVIEW

41.  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a

Complaint. *Alston v. Flagstar Bank, F.S.B.*, 969 F. Supp. 2d 14, 16 (D.D.C. 2013)

(Contreras, J.), *rev'd on other grounds,* 609 Fed. Appx. 2 (D.C. Cir. 2015).  A Rule

12(b)(6) "motion does not test a plaintiff's ultimate likelihood of success on the merits,

but rather, whether a plaintiff has properly stated a claim." *Id.* (citing *Scheuer v. Rhodes,*

416 U.S. 232, 236, (1974)). Plaintiffs' "complaint is only required to set forth a short and

plain statement of the claim, in order to give the defendant fair notice of the claim and the

grounds upon which it rests." *Id.* (citing *Kingman Park Civic Ass'n v. Williams,* 348 F.3d

1033, 1040 (D.C. Cir. 2003); Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47

(1957)).

42.  When considering a Rule 12(b)(6) motion, a court "presumes the factual

allegations of the complaint to be true and construe them liberally in the plaintiff's

favor." *Id.* (citing *United States v. Philip Morris, Inc.,* 116 F. Supp. 2d 131, 135 (D.D.C.

2000)). While "[i]t is not necessary for the plaintiff to plead all elements of his prima

facie case in the complaint, or to plead law or match facts to every element of a legal

theory ... 'to survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) and citing *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 562 (2007)). "A claim is facially plausible when the pleaded

factual content 'allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.'" *Id.* (quoting *Iqbal,* 556 U.S. at 678 (citing *Twombly,*

550 U.S. at 556)). "'The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.*

(quoting *Twombly,* 550 U.S. at 556).

43.  Finally, "a complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Conley*, 355 U.S. at 45-46; *see also Swierkiewicz v.*

*Sorema N.A.,* 534 U.S. 506, 514 (2002) (stating a court may dismiss a complaint "only if

it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations").

## ARGUMENT

44.  As this Court has said, "This case involves allegations that, if true, drastically undermine the

integrity of a District of Columbia police officer and illustrate the damage that the unscrupulous

use of power can inflict upon citizens of the state." *Sherrod v. McHugh* 334 F. Supp. 3d 219

(D.D.C. 2018).  This quote is from a case recently heard by the United States District Court for

the District of Columbia.  In *Sherrod,* like the instant case, the District of Columbia, thru its

police, Metropolitan Police Department, abused its authority, by relentlessly pursuing, arresting

and jailing innocents, with unprovable, crimes. Here, unlike *Sherrod*, the Police Officer claimed

that Plaintiff Bethel was a thief and obtained an "arrest warrant" for his arrest with dubious, less

than fully developed claims that has caused a lifetime of harm for Plaintiff Bethel.  The genesis

of Plaintiff Bethel's harm stems from a suspicious investigation that was truly botched by the

District of Columbia Defendants.  All they had to do was watch the video and listen to the audio

tapes of events concerning Plaintiff Bethel, inside the Defendant, Home Depot USA Inc., store

on Rhode Island Ave. N.E. occurring on July 19, 2019.

45.   Defendants District of Columbia claim that a motion to dismiss the proposed second complaint is in order on account of the assertion that the police had a valid arrest warrant for Plaintiff Bethel when they visited his home and at all time relevant to this case.  District of Columbia Defendants base this justification on a document that, as of this writing, has not been produced.  Indeed, Plaintiff Bethel has been threatened with this ghost since his home was visited by Defendants District of Columbia on August 20, 2019.  They claim to have had a warrant for his arrest on that visit and up to and including today.  They claim that the warrant has the cloak of believability because it exists.  Plaintiff Bethel disagrees.

46.  In order for an arrest warrant to be a legally enforceable document it has to be signed by an "appropriate prosecutor" and a neutral magistrate or a Judge.  23 D.C. Code 561 (2001) Once served the warrant must be returned to the Court from which it was issued and the arrested defendant bound over for prosecution.  23 D.C. Code 562 (2001) Here, as the District Defendants know no arrest warrant exists for the Plaintiff.  The proposed second amended complaint avers that Plaintiff Bethel has never been served with an arrest warrant.  Contrary to Defendants District of Columbia assertions no warrant has been produced.   The District of Columbia Defendants assume that a warrant exists but there is no record of one. Notwithstanding their unavailing arguments about probable cause which they claim is found in this fantasy arrest warrant for Plaintiff Bethel.  There is no arrest warrant.  The existence of this alleged arrest warrant for Plaintiff Bethel is a factual issue, one that should be decided by a jury. It is not a legal issue.  The District Defendants request for dismissal of the proposed second amended complaint should be denied.

47.   While the investigation of Plaintiff Bethel did not produce the arrest warrant and affidavit to support it there are assertions about its existence from the District of Columbia Defendants.

19

These false affirmations can be found in the proposed second amended complaint of Plaintiff Bethel at: (See ECF 11-2 pg. 50 of 68) [incident report of alleged theft by Defendant Rodriguez]; (See ECF 11-2 pg. 53 of 68) letter from Plaintiff to District of Columbia identifying the alleged warrant number]; (See ECF 11-2 pg. 58 of 68 [incident report where Defendant Rodriguez will apply for a warrant for Plaintiff Bethel]; (See ECF 11-2 pg. 58 of 68) [incident report laying out narrative of alleged theft by Plaintiff Bethel]; (See ECF 11-2 pg. 65 of 68) [District of Columbia Defendants respond to 12-309 letter of Plaintiff claiming the District of Columbia Defendants have no liability because the officers had a valid warrant for Plaintiff]. The District of Columbia Defendant's declarations that a valid warrant for the arrest of Plaintiff Bethel existed are not supported by the investigative record.

<u>Plaintiff Bethel's Assault Claims Are The Product Of Defendant District Of Columbia's Unlawful Detention Of Plaintiff Bethel Which Was Based Upon An Arrest Warrant That Can Not be Found; That, If It Exists, Was Obtained By False Swearing, Rendering it Devoid Of Probable Cause</u>

48. Plaintiff Bethel was directed to appear and turn himself in to Defendant District of Columbia Defendants after a visit to his home on August 20, 2019. As it turns out the District of Columbia Defendants' made false defamatory statements to obtain an "arrest warrant" for Plaintiff Bethel. The District of Columbia Defendants had over a month to investigate the statements of Defendant Benton, employee of Defendant Home Depot USAS Inc. that Plaintiff Bethel had stolen an air conditioner from Defendant Home Depot USA Inc. Plaintiff Bethel appeared at the 5th District police station, pursuant to Defendants District of Columbia's threats on August 21, 2019. He was met by police officers who held onto him as he was seated and interviewed. He was held against his will, without legal authority, subjected to questions, harassed and ultimately discharged after being placed on the station Detention Journal. Plaintiff Bethel was never presented with an "arrest warrant" signed by a prosecutor or a Judge at the station.

49. In the District of Columbia, assault is defined as "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff." *Holder v. District of Columbia,* 700 A.2d 738, 741 (D.C. 1997). A defendant's conduct rises to the level of an assault if it "place[s] the plaintiff in reasonable fear of bodily harm" or if the circumstances surrounding the conduct "give rise to a reasonable or well-founded apprehension of injury or imminent contact." 6A C.J.S. Assault § 4 (2014); 6 Am. Jur. 2d Assault and Battery § 90 (2014); *see also Person v. Children's Hosp. Nat'l Med. Ctr.,* 562 A.2d 648, 650 (D.C. 1989) ("An assault results from apprehension of an imminent harmful or offensive contact, in contrast with the contact itself."). The proposed second amended complaint sets out well-pled claims for assault against the District of Columbia Defendants. [94]

Assuming arguendo, that an arrest warrant did exist on the day that Plaintiff Bethel turned himself in, it was lacking in probable cause for the arrest of Plaintiff Bethel because he paid for the air conditioner from Defendant Home Depot USA Inc. The District of Columbia Defendants knew or should have known of the utter lacking of probable cause for the alleged arrest warrant.

---

[94] Plaintiff Bethels assault claims against Defendant  District of Columbia Defendants  are set forth in Count five of the proposed second amended complaint, which reads as follows:
83. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.
84. Defendant Rodriguez had no probable cause or legal justification to seize, search, arrest/detention, or imprison Plaintiff Larry Bethel.
85. Defendant Rodriguez's actions towards Plaintiff Larry Bethel constitute a false arrest and false imprisonment in violation of the common law of the District of Columbia.
86. At the time Defendant Rodriguez committed this unlawful conduct towards Plaintiff Larry Bethel, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.
87. Defendant Rodriguez's outrageous, unconscionable, and unlawful arrest and detention of Larry Bethel, caused him "mental suffering, including fright, shame and mortification from the indignity and disgrace, consequent upon illegal [arrest and] detention" and to incur legal expenses.

### Plaintiff Bethel's Malicious Prosecution Claims are Properly Pled

50. The District of Columbia Court of Appeals has "long held that in order to support an action

for malicious prosecution in the District of Columbia, a plaintiff must plead and be able to prove:

1) that the underlying suit terminated in plaintiff's favor; 2) malice on the part of the defendant;

3) lack of probable cause for the underlying suit; and 4) special injury occasioned by plaintiff as

the result of the original action*." Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1282 (D.C.

2002) (citing *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980); *Ammerman v. Newman*, 384

A.2d 637, 639 (D.C. 1978)). The District Defendants challenge only the amended complaint's

pleading sufficiency of the first of the tort's four elements ("that the underlying suit terminated

in plaintiff's favor") and, therefore, concede the pleading sufficiency of the remaining three

elements. "Under D.C. law, a plaintiff need not show that he was found innocent after a trial

in order to demonstrate that a case terminated in his favor." *Blakeney v. O'Donnell*, 117 F. Supp.

3d 6, 19 (D.D.C. 2015) (Mehta, J.) (citing *Brown v. Carr,* 503 A.2d 1241, 1245 (D.C. 1986)).

"All that is required is termination of the kind that 'tends to indicate the innocence of the

accused.'" *Id.* at 19 (quoting *Brown,* 503 A.2d at 1245); *see also Whelan v. Abell*, 953 F.2d 663,

669 (D.C. Cir. 1992) ("The District of Columbia Court of Appeals has determined that favorable

termination does not require a final disposition on the merits; rather, any termination that reflects

on the innocence of the defendant in the underlying suit may suffice." (internal citations and

quotation marks omitted)).

In *Brown,* the D.C. Court of Appeals stated: "[While] no favorable termination is

found where the earlier action is dismissed on the ground of the statute of limitations or laches

because these dispositions do not reflect on the merits of the underlying claim …[a] dismissal for

failure to prosecute has been held to be a favorable termination where the facts of the case

indicate that such a disposition reflects on the innocence of the defendant in the underlying suit."

503 A.2d at 1245 (internal citations omitted). Indeed, "District of Columbia courts have found

that abandonment of an action, or voluntary dismissal for lack of prosecution, can constitute a

termination in plaintiff's favor for the purposes of malicious prosecution." *Feld Entm't Inc. v.*

*Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 331 (D.D.C. 2012)

(Sullivan, J.); *see also Lucas v. District of Columbia*, 505 F. Supp. 2d 122, 127 (D.D.C. 2007)

(Collyer, J.) (holding when underlying case is dismissed for lack of prosecution, it may reflect on

innocence of defendant).  Plaintiff Bethel has sufficiently pled facts to show (or at least suggest)

that the underlying criminal case initiated by District of Columbia Defendants was terminated in

his favor on grounds tending to indicate his innocence. In Count Fourteen Plaintiff Bethel's

common law malicious prosecution claim against Defendants District of Columbia, Plaintiff

Bethel alleges:

### COUNT FOURTEEN
### (Defendant District of Columbia's
### Malicious Prosecution of Plaintiff Larry Bethel)

139. Plaintiff incorporates by reference each preceding paragraph as if fully set
forth herein.

140. This count concerns injuries sustained by Plaintiff Larry Bethel on and/or
after July 19, 2019.

141. Defendant Rodriguez initiated, procured, and advanced a criminal
proceeding against Plaintiff Larry Bethel in the absence of probable cause for
the proceeding and with malicious intent on the part of this Defendant.

142. The criminal proceeding was terminated in favor of Plaintiff Larry Bethel
on grounds that "tend[ed] to indicate the innocence of the accused:"

143. Defendant Rodriguez's actions towards Plaintiff Larry Bethel constitute a
malicious prosecution in violation of the common law of the District of
Columbia.

144. At the time Defendant Rodriguez committed this unlawful conduct
against Plaintiff Larry Bethel, he was acting in the scope of his employment as
a police
officer employed by the District of Columbia Metropolitan Police Department
and was acting on behalf of and in the interests of his employer, Defendant
District of Columbia.

145. Defendant District of Columbia is vicariously liable for the actions taken by Defendant Rodriguez in maliciously prosecuting Plaintiff Larry Bethel under the doctrine of respondeat superior.

146. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Larry Bethel suffered significant emotional pain, physical pain, suffering, fear and shame, and other damages.

The District of Columbia Defendants claim, in their instant motion to dismiss the proposed second amended complaint: "Because Plaintiff has not alleged that MPD instituted a criminal prosecution against him-let alone that any such suit terminated in his favor-the Court should dismiss Plaintiff's malicious prosecution claim" (Count IV) See 1:20-cv-01940, Document 12 filed 9/4/20 pg. 9 of 17 This observation flies in the face of the abandonment by the District of Columbia Defendants of the prosecution of Plaintiff Bethel. The existence of the alleged "warrant" for Plaintiff Bethels arrest is a factual question that must be answered. Assuming *arguendo,* that it does exist it nonetheless lacks probable cause because Plaintiff bethel paid for the air conditioner.

51. Finally, the District of Columbia Defendants do not dispute that they are subject to vicarious liability under the doctrine of *respondeat superior* for Defendant Rodriguez's malicious prosecution of Plaintiff Bethel and the other torts committed by Defendant Rodriguez in the scope of his employment. *See District of Columbia v. White,* 442 A.2d 159, 162 n.7 (D.C. 1982) ("Under the doctrine of *respondeat superior* the District of Columbia is liable for the torts of its police officers acting under the scope of their employment.").

Negligence

52. The District of Columbia Defendants challenge the pleading sufficiency of Plaintiffs' negligence claims in the proposed second amended complaint. The District of Columbia Defendants mischaracterize both Plaintiffs' pleading and the governing law. The

proposed second amended complaint pleads sufficient facts to support a negligence claim under

District of Columbia law. Count Nine sets forth Plaintiff Bethel's negligence claim against

District of Columbia Defendant Rodriguez and reads as follows:

### COUNT NINE
### (Defendant Rodriguez's Negligence
### Toward Plaintiff Larry Bethel)

106. Plaintiff incorporates by reference each preceding paragraph as if fully set forth herein.

107. The MPD maintains written policies and procedures for the obtaining and service of search and arrest warrants to which Defendant Rodriguez and all other Department employees had and have a duty to abide.

108. The MPD's written internal policies and procedures provide that search and arrest warrants shall only be issued and served based on probable cause that would lead a reasonable, prudent, and cautious police officer to believe a crime has been committed.

109. The MPD's written internal policies and procedures also require that each and every member of the Department who applies for a warrant must corroborate the facts stated in an affidavit submitted in support of the application and determine the accuracy, validity, and truthfulness of all information presented.

110. Defendant Rodriguez, acting as an employee for Defendant District of Columbia in his capacity as a police officer for the District of Columbia, owed a duty to Plaintiff Larry Bethel to perform his police duties in accordance with the MPD's internal written policies and procedures and without violating his constitutional rights under the Fourth Amendment of the United States Constitution to be secure from state actions that result in unlawful searches, seizures, and/or arrests made without probable cause and/or based on false affidavits.

111. Defendant Rodriguez breached his duties to Plaintiff by subjecting him to unlawful arrests made without probable cause and/or based on false affidavits.

112. At the time Defendant Rodriguez committed this unlawful conduct towards Plaintiffs, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of
Columbia.

113. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered significant emotional pain, suffering, fear and shame, and other damages.

53. Count Fifteen set out Plaintiff Bethels negligence count against Defendant

District of Columbia.

## COUNT FIFTEEN
### (Defendant District of Columbia's
### Negligence Toward Plaintiff Larry Bethel)

147. Plaintiff incorporates by reference each preceding paragraph as if fully set forth herein.

148 This count concerns injuries sustained by Plaintiff Larry Bethel on and/or after July 19, 2019.

149. The MPD maintains written internal policies and procedures for the obtaining and service of arrest warrants to which Defendant Rodriguez and all other Department employees had and have a duty to abide.

150. The MPD's written internal policies and procedures provide that arrest warrants shall only be issued and served based on probable cause that would lead a reasonable, prudent, and cautious police officer to believe a crime has been committed.

151. The MPD's written internal policies and procedures also require that each and every member of the Department who applies for an arrest warrant must corroborate the facts stated in the affidavit submitted in support of the application and determine the accuracy, validity, and truthfulness of the information presented.

152. Defendant Rodriguez, acting as an employee for Defendant District of Columbia in his capacity as a police officer for the District of Columbia, owed a duty to Plaintiff Larry Bethel to perform his police duties in accordance with the MPD's written internal policies and procedures and without violating her constitutional rights under the Fourth Amendment of the United States Constitution to be secure from state actions that result in the unlawful arrests made without probable cause or based on false affidavits.

153. Defendant Rodriguez breached his duties to Plaintiff Larry Bethel by subjecting him to an unlawful arrest on July 19, 2019 without probable cause based on his false affidavit.

154. Defendant District of Columbia is vicariously liable for the negligent acts of Defendant Rodriguez taken against Plaintiff complained of herein under the doctrine of respondeat superior.

155. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Larry Bethel suffered significant emotional pain, suffering, fear and shame, and other damages.

54. "In a negligence action, 'the plaintiff must establish by competent evidence a standard of care; that the defendant violated that standard; and that such violation proximately caused injury to the plaintiff. ... When an expert's testimony is required, the expert must articulate and refer to a standard of care by which the defendant's actions can be

measured." *Lane*, 72 F. Supp. 3d at 224-25 (quoting *District of Columbia v.Carmichael*, 577 A.2d 312, 314 (D.C. 1990)). In this case, Plaintiff Bethel alleges that District of Columbia Defendant Rodriguez failed to exercise the standard of care of "a reasonable, prudent and cautious police officer" ("The MPD's written internal policies and procedures provide that search and arrest warrants shall only be issued and served based on probable cause that would lead a reasonable, prudent, and cautious police officer to believe a crime has been committed.").[95]

55. Plaintiff Bethel further alleges that "Defendant Rodriguez breached his duties to Plaintiff Bethel by subjecting him to unlawful searches, seizures, and arrests made without probable cause and/or based on false affidavits." [96] This is sufficient to withstand the District Defendants' motion to dismiss on the standard of care question. *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 44 (D.D.C. 2015) (holding an allegation that individual officers "failed to exercise the standard of care of a reasonably prudent police officer" sufficient at the summary judgment stage of a litigation.). The District of Columbia Defendants' contention that internal policies - standing alone – cannot demonstrate the applicable standard of care" [97] misses the point in the context of a motion to dismiss. First, Plaintiff Bethel is not required to "prove" anything in order to defeat District of Defendants' motion to dismiss. Rather, Plaintiff Bethel must merely demonstrate that

---

[95] Proposed second amended complaint ¶¶107 thru 110

[96] *Id.* ¶111

[97] "The D.C. Circuit has explained that 'internal policies standing alone cannot demonstrate the applicable standard of care' because 'to hold otherwise would create the perverse incentive for [the organization] to write its internal operating procedures in such a manner as to impose minimal duties upon itself in order to limit civil liability rather than imposing safety requirements upon its personnel that may far exceed those followed by comparable institutions.'" *Sanders v. United States*, 572 F. Supp. 2d 194, 199 (D.D.C. 2008) (quoting *Briggs*, 481 F.3d at 848 (internal quotation marks and citations omitted)).

his proposed second amended complaint contains plausible factual grounds for his claims. *Twombly*, 550 U.S. at 556-57. Plaintiff Bethel has met and exceeded this burden.

56.  Second, Plaintiff Bethel does not maintain that the MPD's internal operating procedures (in the instant case, the MPD's General Orders) are statutes or regulations that establish standards of care as a matter of law. *Wanzer v. District of Columbia,* 580 A.2d 127, 133 (D.C. 1990) ("As a preliminary matter, we note that an MPD General Order essentially serves the purpose of an internal operating manual, and does not have the force or effect of a statute or an administrative regulation") (internal quotation marks and citations omitted)). Thus, Plaintiff Bethel does not maintain that District of Columbia Defendant Rodriguez's violation of the MPD's General Orders constitutes negligence *per se. See Clark v. District of Columbia*, 708 A.2d 632, 636 (D.C. 1997) ("Because the Suicide Prevention Plan is only an unpublished internal agency procedure and not a statute or regulation, it cannot embody the standard of care under a negligence *per se* theory.").

Rather, Plaintiff Bethel cites the MPD's internal procedures in his proposed second amended complaint as competent evidence of the national standard of care "by which a trier of fact [will] measure the specific conduct at issue in this case." *Evans-Reid v. District of Columbia*, 930 A.2d 930, 936 (D.C. 2007); *Jones v. Nat'l R.R. Passenger Corp.,* 942 A.2d 1103, 1108 (D.C. 2008) (Fisher, J.) (holding "internal procedures may be 'admissible as *bearing on the* standard of care,' but 'expert testimony was still required to establish that the internal policies embodied the national standard of care and not a higher, more demanding one." (emphasis in original internal citation omitted)).

57.  In *Kenley*, Judge Boasberg rejected a similar standard of care argument asserted by the District in a motion to dismiss and observed:

> While Defendants focus on whether violations of an MPD General Order can constitute negligence *per se, see id.* at 11; Reply to Officers' Opp. at 21, that is beside the point. Plaintiff is not asserting that the General Order is a statute or regulation that establishes negligence *per se*. As to both officers, *Plaintiff alleged that they failed to exercise the standard of care of a reasonably prudent police officer.* See Am. Compl., ¶ 68. *At this stage of the litigation, this is sufficient.*

*Kenley*, 83 F. Supp.3d at 44 (emphasis supplied). *See also Lane*, 72 F. Supp.3d at 225

("Finally, Bradley pointed **to MPD orders** and District statutes and regulations that he says

reflect these national norms. ... Based on Bradley's expert testimony, the Court finds that Lane

has offered evidence of a national standard of care for use of force and therefore will deny the

Defendants' summary judgment motion on Count 20." (emphasis supplied)). This Court should

likewise reject the District of Columbia Defendants' efforts to dismiss a well-pled police

misconduct common law negligence claim.

58. Plaintiff Bethels' Negligent Infliction of Emotional Distress Claims Are Properly Pled

The District of Columbia's "definition of the tort of negligent infliction of emotional distress

has evolved over the years." *Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 796 (D.C.

2011). "In its earliest iteration, [the D.C. Court of Appeals] followed the 'physical impact'

rule, which permits recovery for negligently inflicted emotional distress if the distress results

from a physical impact and is accompanied by physical injury." *Id.* (citing *Asuncion v.

Columbia Hosp. for Women,* 514 A.2d 1187, 1188-89 (D.C. 1986) (citing cases dating to

1929)). "The physical impact requirement, although *de minimis,* was thought to provide some

guarantee of the legitimacy of the mental harm alleged and thereby deter frivolous claims."

*Id.* (citing *Asuncion,* 514 A.2d 1189 ("minimal impact" requirement was satisfied by the

"mere presence" of post procedure medical gauze in a patient's body)).

59. However, in *Williams v. Baker*, 572 A.2d 1062 (D.C. 1988) (*en banc*), the court"
abandoned the 'physical impact' requirement in favor of the more liberal 'zone of physical
danger' rule, which permits recovery for mental distress if the defendant's actions caused the
plaintiff to be 'in danger of physical injury' and if, as a result, the plaintiff feared for his own
safety." *Id.* In *Hedgepeth,* the D.C. Court of Appeals, reaffirmed the application of the zone of
physical danger test in most negligent infliction of emotional distress claims. *Id.* at 792
("Although the rule in *Williams* continues to be generally applicable to claims of negligent
infliction of emotional distress, the zone of physical danger requirement imposes an
unnecessary limitation upon, and is not to be applied indiscriminately in all cases to, claims of
emotional distress brought against a defendant who has a relationship with the plaintiff, or has
undertaken an obligation to the plaintiff, and whose negligence causes serious emotional
distress to the plaintiff.")

60. In their motion to dismiss Plaintiff Bethel's proposed second amended complaint, the
District of Columbia Defendants aver that Plaintiff Bethel was not in a "zone of physical
danger." Although, Plaintiff Bethel and District of Columbia Defendant Rodriguez did not
meet Defendant Rodriguez put Plaintiff Bethel in a physically and fearful zone by falsely
claiming, in the alleged arrest warrant, that Plaintiff Bethel stole property of another.
Ultimately District of Columbia Defendant Rodriguez did not serve the bogus warrant;
however, that job was left up to the warrant squad.   District of Columbia Defendant
Rodriguez knew or should have known that the presumed arrest warrant would be placed on a
network for notification that was opened to any law enforcement officer.  Within the MPD
there exists a special group of Officers whose job is to serve arrest warrants.  They receive
special training on apprehension of arrestees by force or otherwise.  These Officers handle

difficult and dangerous situations involving apprehensions. They demonstrated their special skills and ferocity when they showed up at Plaintiff Bethels home by surprise, purposely, installing fear in Witness 1 and Witness 2. [98]

61. When Plaintiff Bethel was warned by Witness 1 and 2 about the police coming to his home on August 20, 2019, he became very fearful. Plaintiff Bethel was fearful of the police and cautiously approached them about this alleged warrant and his potential arrest.[99] Plaintiff Bethel called the number on the card that was left with Witness 1. Plaintiff Bethel spoke with an Officer Harmon who advised him about the "arrest warrant" and demanded that he turn himself in. Plaintiff Bethel was advised that he was wanted for a felony he took this to mean he was in serious trouble. Plaintiff 'Bethel pleaded with Officer Harmon that he did not steal anything from Defendant Home Depot USA Inc. Officer Harmon ignored Plaintiff Bethels' explanations and ordered him to surrender. When Plaintiff Bethel turned himself in he expected to be thrown into jail. When Plaintiff Bethel turned himself in at the 5th District he was taken into custody and questioned. He had never been arrested before and had no idea that he did not have to turn himself in; or once in custody, be *Mirandized* before answering questions. Plaintiff Bethel was searched electronically when he entered the station and by hand when he spoke to a police officer. Plaintiff Bethel was kept at the station for a considerable period of time while the police officers checked on his status. District of Columbia Defendant Rodriguez, the presumptive affiant of the alleged arrest warrant, did not appear at the station after notification. One of the Officers, Officer Dennis, who was interviewing Plaintiff Bethel, checked for the alleged arrest warrant for Plaintiff Bethel and

---

[98] Proposed second amended complaint ¶¶ 47-50
[99] *Id.* ¶¶ 53-54

was not able to locate it on any system he checked.  After a considerable amount of time

Plaintiff Bethel was told that he could leave the station but was advised that the warrant for

his arrest was not resolved and if he encountered the police thereafter he could be arrested if

they checked and found the warrant.

62. District of Columbia Defendant Rodriguez negligently subjected Plaintiff Bethel to an

unlawful search, seizure, and arrest made without probable cause and/or based on a false

affidavit, in violation of his duty owed to Plaintiff Bethel.  Plaintiff Bethel was touch searched

by the police at the 5th District, not allowed to leave and placed on the Detention Journal.

Plaintiff Bethel was placed in a zone of danger by the negligence of District of Columbia

Defendant Rodriguez.

63.   In *Sherrod  supra.*  this Court had the occasion to review negligent infliction of

emotional distress [NIED] where the facts showed a MPD officer obtained an arrest warrant

for the Plaintiff, based upon a complainants' statement and review of a video tape of the

encounter between the complainant and the suspect.  The facts showed the arrest warrant was

based upon false statements of the Police Officer.  There were three instances where the false

statements of the police officer resulted in harm coming to the suspects.  This Court

determined, in resolving, a motion to dismiss the complaint for failure to state a claim on a

NIED that the standard of care for the police officer was that of "a reasonable police officer."

*Sherrod supra.* carries the  following language about the standard of care.

> A uniform standard of care applies in actions for negligence: reasonable care
> under the circumstances." *O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C. 1982).
> However, as part of the "circumstances" under which reasonableness is
> determined, the court must consider "that those with special training and
> experience adhere to a standard of conduct commensurate with such
> attributes." *Id.* (quoting *Morgan v. District of Columbia,* 449 A.2d 1102, 1108
> (D.C. 1982), *vacated on other grounds,* 452 A.2d 1197 (D.C. 1982)). Thus,

police officers' standard of care is that of a reasonable police officer under the circumstances. *See Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 44 (D.D.C. 2015). Although police department policies and orders are generally insufficient to establish a freestanding duty that can give rise to claims of negligence *per se*, such regulations may be probative on whether an officer conformed to the general standard of care applicable to police officers. *See id.; McNeil Pharm. v. Hawkins*, 686 A.2d 567, 578 (D.C. 1996) (enumerating the elements of negligence *per se*).

64. The District of Columbia Defendants are not entitled to dismissal of the Intentional Infliction of Emotional Distress Count 17. Plaintiff Bethel alleges that the conduct of District of Columbia Defendant Rodriguez and vicariously under the doctrine of *respondeat superior* that of the District of Columbia Defendant, was extreme and outrageous and intentionally and/or recklessly causing Plaintiff Bethel severe emotional distress and that the District of Columbia Defendants knew, or should have known, that Plaintiff Bethel was particularly susceptible to emotional distress. This was due to his age and no experience with the criminal justice system.

65. To prevail on an intentional infliction of emotional distress claim a Plaintiff must establish that the District of Columbia Defendants engaged in '(1) extreme and outrageous conduct ... which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" (quoting *Minch v. District of Columbia*, 952 A.2d 929, 940 (D.C. 2008)). The District of Columbia Defendants contend that Officer Rodriguez actions did not rise to the level of extreme and outrageous conduct. Finally, The District of Columbia Defendants laments "Additionally, that a judge found probable cause to arrest Plaintiff is fatal to Plaintiff's IIED claim, just as it was to Plaintiff's NIED claim." See Defendant Metropolitan Police Department Motion to dismiss ECF 9/4/20 pg.12 of 17

66. What the District of Columbia Defendants fail to realize is that the alleged arrest warrant for Plaintiff Bethel cannot be found and even if it could be found it lacks probable cause because

Plaintiff Bethel has a receipt for the alleged stolen air conditioner. A video and audio also depicts the transaction. The District of Columbia Defendants never had probable cause to arrest Plaintiff Bethel but never the less had the warrant squad go after Plaintiff Bethel, upset his family, cause Plaintiff Bethel to experience fear and anxiety, caused him to call the police in an effort to disprove a negative and finally caused Plaintiff Bethel to turn himself in to the police for no reason. In engaging in these actions District of Columbia Defendants engaged the "extreme or outrageous conduct" that triggers liability for intentional infliction of emotional distress under District of Columbia law. As already discussed and shown, the issue of whether Officer Rodriguez ever had probable cause to investigate or arrest Plaintiff Bethel at any time is a material issue of fact that precludes the dismissal of Count 17. Moreover, "[o]utrageous conduct may consist of the abuse of a position of authority, particularly by, inter alia, police officers" and supports an award of damages for the intentional infliction of emotional distress under District of Columbia law. *Drejza v. Vaccaro*, 650 A.2d 1308, 1314 (D.C. 1994) (internal quotation marks and brackets omitted) (citing *Carter v. District of Columbia*, 254 U.S.App.D.C. 71, 94, 795 F.2d 116, 139 (1986) citing Restatement (Second) of Torts § 46, comment e (1965)).

67. Defamation per se in the District of Columbia is when you say something about someone so inflammatory that there is no need to prove any actual damages. This includes when you accuse someone of committing a crime. The elements of Defamation are: (1) the defendant made a false and defamatory statement concerning plaintiff; (2) the defendant published the statement without privilege to a third party;(3) the defendant's fault in publishing the statement amounted to at least negligence; (4) either the statement was actionable as a matter of law irrespective of special harm or its publication caused the plaintiff special harm. See *Jankovic v. International Crisis Group*, 429 F.Supp.2d 165, 173-4 (D.D.C. 2006).

68. In the District of Columbia, any written or printed statement that falsely accuses someone of committing a crime constitutes defamation per se. See *Raboya v. Shrybman & Associates*, 777 f.Supp. 58 (D.D.C. 1991). If a statement is defamatory *per se*, the court will assume harm to the plaintiff's reputation, without further need to prove that harm. Here, District of Columbia Defendants Officer Rodriguez spoke to Home Depot USA Inc. Defendant Benton advised Rodriguez that Plaintiff Bethel stole an air conditioner and requested that he get an arrest warrant for Plaintiff. This information was false and had District of Columbia Defendant Rodriguez examined the available evidence he would have known no shopliftings occurred. Not deterred District of Columbia Defendant Rodriguez pursued an arrest warrant by making statements to a prosecutor and a neutral judge that were totally untrue. That alleged warrant was issued for the Plaintiff. The language District of Columbia Defendant Rodriguez averred in the warrant affidavit was knowingly false. That remains an issue with reference to dismiss the defamation per se count. The warrant whether it exists or not is a question of fact and if it exists the content would be a question of law.

69. The Public Duty Doctrine does not help the District of Columbia Defendants to get the negligence claim of Plaintiff Bethel or any claim dismissed. The public duty doctrine provides that a municipality cannot be held liable for breach of a duty that it owes to the general public, as opposed to a particular individual. *Nealon v. District of Columbia*, 669 A.2d 685, 691 (D.C. 1995). "[A] person seeking to hold the District of Columbia liable for negligence must allege and prove that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public." *Klahr v. District of Columbia*, 576 A.2d 718, 719 (D.C 1990). Liability arises out of a "special relationship" between the city and the injured party. *Powell v. District of Columbia*, 602 A.2d 1123, 1129 (D.C. 1992). Such a special relationship

35

can be established in two ways: (1) by a statute prescribing "'mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole'"; or (2) "'a direct contact or continuing contact between the [injured party] and the governmental agency . . . and [] justifiable reliance on the part of the victim.'" *id.* at 1129-30; *Morgan v. District of Columbia,* 468 A.2d 1306, 1314 (D.C. 1983) (en banc); *Platt v. District of Columbia,* 467 A.2d 149, 151 (D.C. 1983).

70.  The District of Columbia Defendants argue that Plaintiff Bethel failed to demonstrate in his proposed second amended complaint that either exception to the public duty doctrine is pertinent to the matter. In opposition, Plaintiff Bethel contends that the public duty doctrine is wholly not available to the District because the alleged breach of duty is not owed to the general public. Primarily, in the District of Columbia, the public duty doctrine has applied to cases asserting negligence in which first responders, such as law enforcement, fire protection, emergency medical services, and child protective workers, were alleged to have breached a duty owed to the public generally. *See Klahr,* 576 A. 2d 718 (D.C. 1990) (law enforcement); *McGaughey v. District of Columbia,* 684 F.3d 1355 (D.C. Cir. 2012) (law enforcement); *Taylor v. District of Columbia,* 776 A.2d 1208 (D.C. 2001) (law enforcement); *Turner v. District of Columbia,* 532 A.2d 662 (D.C. 1987) (child protective services); *Warren v. District of Columbia,* 444 A.2d 1 (D.C. 1981) (law enforcement). 71.  The instant matter does not follow the precedence that a municipality cannot be liable for breaching a duty it owes to the general public because any duties owed to Plaintiff Bethel were not of the kind owed to the general public. Plaintiff Bethel during all relevant time periods for the complaint was a shopper in a retail store. At the time of the incident, Plaintiff Bethel was not a member of the general public seeking emergency assistance. Rather, Plaintiff Bethel was an employee of a private hospital seeking services from a

retail store. The Complaint does not allege that emergency services breached their duty to respond. Rather, the proposed second amended complaint alleges the District of Columbia Defendants, breached: a duty to conduct a full and complete investigation of individual allegations against him.   District of Columbia Defendants owed a duty to take reasonable measures to protect Plaintiff Bethel from his reputation being maligned. A duty to investigate whether Defendant Home Depot USA Inc. was properly operating its surveillance equipment to provide safety from false accusations against Plaintiff Bethel while he was shopping in Defendant Home Depot USA Inc. store on Rhode Island Ave, N.E. As such, dismissal should be denied because the public duty doctrine is not applicable to the instant matter.

## CONCLUSION

For the foregoing reasons, the District Defendants' motion is not well taken and

should be denied. If the Court finds any count in the proposed second amended complaint

challenged by the District Defendants to be lacking, the Court should afford Plaintiffs leave to

replead. *See Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 648 (S.D.N.Y. 2004) *on*

*reconsideration in part*, 2004 WL 1781148 (S.D.N.Y. Aug. 10, 2004) ("The general rule

is that leave to replead should be granted when a complaint is dismissed."); *Old Republic*

*Ins. Co. v. Hansa World Cargo Serv., Inc.,* 170 F.R.D. 361, 375 (S.D.N.Y. 1997) (holding that

when a court grants a motion to dismiss for failure to state a claim upon which relief can be

granted the court should grant plaintiff leave to replead).

Respectfully submitted,

*/s/ Ronald Dixon*
Ronald Dixon
D.C. Bar No.954628
Bynum & Jenkins
1010 Cameron Street
Alexandria, VA 22314
T: (703) 549-7211
F: (703) 549-7701
E: rdixon@bynumandjenkinslaw.com

### CERTIFICATE OF SERVICE

I certify that on    September 18, 2020, I served a copy of the foregoing *via* the CM/ECF
system on: Philip Medley Assistant Attorney General, 400 6th Street N.W. Washington,
D.C.20001; Rachel Stewart, Attorney for the Home Depot USA Inc. Rachel Lynn Stewart
KALBAUGH, PFUND & MESSERMITH, P.C. 3950 University Drive, Suite 204,Fairfax, VA
22030,(703) 691-3331 Fax: 703-691-3332,Email:Rachel.Stewart@kpmlaw.com

*/s/ Ronald Dixon*