# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LARRY BETHEL, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   20-1940 (RC) |
| | : | |
| v. | : | Re Document Nos.:   11, 12 |
| | : | |
| JOSE RODRIGUEZ, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S MOTION TO AMEND; GRANTING IN PART AND DENYING IN PART DEFENDANT METROPOLITAN POLICE DEPARTMENT'S MOTION TO DISMISS

## I.  INTRODUCTION

As alleged in his complaint, Plaintiff Larry Bethel purchased an air conditioner unit from the Home Depot retail store in Northeast Washington, D.C.  About a month later, he learned that a warrant had been issued for his arrest for allegedly stealing the air conditioner unit he had purchased.  Although Plaintiff voluntarily turned himself in and cleared the warrant, he brings this lawsuit to challenge the Defendants' actions that allegedly led to his ordeal.  Plaintiff has alleged constitutional and common law claims against Jose Rodriguez, the investigating officer who allegedly secured the arrest warrant, Nelson Benton, a Home Depot employee who assisted Defendant Rodriguez,[1] the Metropolitan Police Department ("MPD"), and Home Depot U.S.A ("Home Depot").  Before the Court is Plaintiff's motion to amend his complaint and MPD's motion to dismiss the six counts brought against it.  For the reasons stated below, the Court

---

[1] No attorneys have yet entered appearances on behalf of the individual Defendants.

grants Plaintiff's motion to amend and grants in part and denies in part MPD's motion to dismiss.

## II. BACKGROUND

As alleged in the Proposed Second Amended Complaint,[2] Plaintiff drove his gold-colored Toyota to the Home Depot retail store on Rhode Island Avenue in Northeast Washington, D.C. to purchase an air conditioner unit. Proposed 2d Am. Compl. ("2d Am. Compl.") ¶ 16, ECF No. 11-2. After paying for the unit and receiving a receipt for purchase—Plaintiff attached the receipt, evidencing payment of $200.34, to his original complaint, *see* Compl. at 44,[3] ECF No. 1—he noticed that the one he selected was damaged. 2d Am. Compl. ¶¶ 18, 22. When he pointed out the damage to the employee at the cash register, she instructed him to get another without damage. *Id.* ¶¶ 18–19. Because he had already paid, Plaintiff proceeded past the registers and out the door to his car once he retrieved an undamaged unit. *Id.* No Home Depot employee attempted to detain or stop Plaintiff from leaving the store with the air conditioner unit. *Id.* ¶ 21.

Plaintiff alleges that Defendant Benton observed his trip to the store in real time through video and audio recording. *Id.* ¶ 20. After Plaintiff left the store with the air conditioner unit, Defendant Benton allegedly reported to police, specifically Defendant Rodriguez, that Plaintiff had placed an air conditioner unit in his shopping cart and left the store without paying for it,

---

[2] For the reasons explained below, the Court grants Plaintiff's motion to amend his complaint. Although MPD opposes the motion to amend, it argues in the alternative that amendment is futile because the proposed amended complaint fails to state proper claims against it. Given the procedural posture and MPD's arguments in the alternative, the Court treats the Proposed Second Amended Complaint as the operative complaint for purposes of assessing MPD's motion to dismiss. As such, it draws from there to discuss the factual background of the case.

[3] The Court cites here the page number generated by the electronic filing system.

calling it "stolen merchandise." *Id.* ¶ 23. Defendant Benton provided Defendant Rodriguez with the license plate number of the car in which he observed Plaintiff leave. *Id.* Plaintiff alleges that Defendant Rodriguez then failed to fully investigate the report provided by Defendant Benton because if he had, he would have observed video recording of Plaintiff actually paying for the merchandise. *See id.* ¶¶ 31, 40. Plaintiff argues that Defendant Rodriguez should have reviewed the surveillance tape in its entirety, at which point he would have known "that the video did not corroborate the allegations that Defendant Benton had asserted against" him. *Id.* ¶ 40. Defendant Rodriguez then allegedly obtained an arrest warrant for Plaintiff based on "false statements." *Id.* ¶ 42.

About a month after purchasing the air conditioner unit, Plaintiff learned about the warrant for his arrest. *See id.* ¶ 43. Early one morning, police came to Plaintiff's home to arrest him. *Id.* ¶ 46. Although Plaintiff was not present at the time, he learned later, through his relative who was at home, that the police had come to execute a warrant for his arrest. *See id.* ¶¶ 46, 50, 52. When Plaintiff learned of the warrant, he was "frantic with worry." *Id.* ¶ 52. He decided to turn himself in and surrendered himself to police at the 5th District Police Station. *Id.* ¶¶ 54–55. Plaintiff alleges that he "was not free to leave on his own" and that he was "placed on the detention journal." *Id.* ¶ 55. He claims that he "was fearful," "not free to leave the station," and "had no experience with the police." *Id.* But the police did not hold Plaintiff overnight. At some later point that same day, his case was "cleared by arrest" and he "was advised that he could leave the police station." *Id.* Plaintiff alleges that these events have led to "mental anguish and physical harm," including "pain weakness and upset stomach." *Id.* ¶ 57. He states that he has "been diagnosed with Post Traumatic Stress Disorder." *Id.*

Based on these alleged facts, Plaintiff filed a twenty-one-count complaint with an assortment of constitutional and common law claims against Defendants. *See id.* ¶¶ 58–190. Six counts are directed at "Defendant District of Columbia." *See id.* ¶¶ 128–36 (false arrest); *id.* ¶¶ 137–44 (malicious prosecution); *id.* ¶¶ 145–53 (negligence); *id.* ¶¶ 154–62 (negligent infliction of emotional distress); *id.* ¶¶ 163–70 (intentional infliction of emotional distress); *id.* ¶¶ 181–85 (defamation per se). Plaintiff has filed a motion to amend his complaint, but the proposed changes do not dramatically alter the factual allegations and the twenty-one counts are not affected by the revisions. *See* Pl.'s Mot. to Amend Complaint, ECF No. 11; *see also* Proposed 2d Am. Compl. Redline Copy, ECF No. 11-1.[4] MPD opposes Plaintiff's motion and argues that, in light of its arguments made for dismissal, amendment would be futile for the allegations concerning MPD. *See* MPD's Mem. Opp'n Mot. to Amend Compl. at 1–2, ECF No. 14. A day after Plaintiff moved to amend, MPD moved for dismissal of the counts against it under Federal Rule of Civil Procedure 12(b)(6). *See* MPD's Mem. Supp. Mot. Dismiss ("MPD's Mot. Dismiss"), ECF No. 12. Both motions are ripe for decision.

### III. LEGAL STANDARD

Although a party may amend its pleading as a matter of course within twenty-one days of serving it or twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f), in all other cases, the party must either obtain the opposing party's consent or leave of court to amend its pleading. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.*

---

[4] Defendant Home Depot does not oppose Plaintiff's motion, *see* Pl.'s Mot. to Amend Compl. at 2, and has already filed an amended answer, *see* Home Depot's Am. Ans., ECF No. 13. It is not clear whether Defendant Rodriguez and Defendant Benton have a position on the motion. In fact, it is not clear that they have been served and neither has had counsel appear on their behalf.

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The complaint's factual allegations are to be taken as true, and the court is to construe them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Notwithstanding this liberal construal, the court deciding a Rule 12 motion must parse the complaint for "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility requirement means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

### IV.  ANALYSIS

First, the Court must address a procedural complication. Plaintiff moved to amend his complaint a day before MPD moved to dismiss a previous iteration of the complaint. However, MPD's arguments against Plaintiff's motion to amend are substantively the same as its

5

arguments for dismissal. The arguments for dismissal apply with equal force to either version of the complaint. At bottom, MPD argues that Plaintiff fails to state plausible claims to relief. Plaintiff's Proposed Second Amended Complaint does not alter the counts brought against MPD; instead, it modifies the factual background applicable to all counts. *See* Proposed 2d Am. Compl. Redline Copy; *see also* MPD's Mot. Dismiss at 1 n.1 ("Plaintiff makes no substantive changes to the factual allegations concerning Defendant Metropolitan Police Department."). Given this context, and the fact that a court "should freely give leave" to amend when justice requires, Fed. R. Civ. P. 15(a)(2), the Court grants Plaintiff's motion to amend.

The Court begins by briefly addressing MPD's argument that it is a *non sui juris* entity and concludes that the District of Columbia (the "District") should be substituted as a defendant. The Court then addresses the factual sufficiency of the six causes of action pled against MPD—false arrest, malicious prosecution, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and defamation per se—as described in the Proposed Second Amended Complaint.[5]

### A. *Non Sui Juris* Entity

MPD's first argument for dismissal is that "bodies within the District of Columbia government cannot be sued as separate entities, absent statutory provisions for them to sue and be sued." MPD's Mot. Dismiss at 3 (citing *Ray v. Dist. of Columbia*, 535 A.2d 868, 869 n.2 (D.C. 1987)). Because MPD is a subordinate agency of the District, MPD argues that the Court should dismiss it as a defendant in this matter. *Id.* at 3–4. Not disputing MPD's statement of the

---

[5] Plaintiff alleges throughout his complaint that the District is vicariously liable for the actions taken by Defendant Rodriguez. *See, e.g.*, 2d Am. Compl. ¶ 135. MPD does not dispute that the District would be liable under the doctrine of *respondeat superior* for the actions of Defendant Rodriguez committed within the scope of his employment.

law, Plaintiff points out that the Proposed Second Amended Complaint names as a defendant "Metropolitan Police Department, District of Columbia" and refers to "Defendant District of Columbia" throughout the pleading. Pl.'s Opp'n at 2 n.1. The Court agrees that MPD is not a properly named defendant. *See Hunt v. Dist. of Columbia*, No. 02-7044, 2002 WL 1997987, at *1 (D.C. Cir. 2002) (per curiam) ("The district court correctly concluded that appellee Metropolitan Police Department is *non sui juris*."). Accordingly, the Court will substitute the District of Columbia as the proper party defendant. *See Turner v. Dist. of Columbia*, No. 14-cv-424, 2014 WL 1189879, at *1 (D.D.C. Feb. 27, 2014) (substituting the District of Columbia as defendant in place of MPD).

### B. False Arrest

MPD argues that Plaintiff's false arrest claim must be dismissed because he concedes that Defendant Rodriguez obtained a warrant for his arrest. *See* MPD's Mot. Dismiss at 6.[6] "A false arrest or imprisonment claim turns first on whether the plaintiff was unlawfully detained." *Liser v. Smith*, 254 F. Supp. 2d 89, 95 (D.D.C. 2003). Because the claim requires showing that the detention was unlawful, "[a]n arrest pursuant to a valid warrant typically provides no basis for a false arrest claim because 'the fact that a neutral magistrate has issued a warrant is the clearest indication that the [arresting] officers acted in an objectively reasonable manner.'" *Cruz-Roldan v. Nagurka*, 2020 WL 571022, at *10 (D.D.C. Feb. 5, 2020) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546, (2012)). An arrest warrant is not valid, however, if secured on the

---

[6] MPD presumes that Mr. Bethel's description of what happened after he turned himself in is the detention forming the basis of his false arrest claim. *See id.* at 4 n.2. Given that Mr. Bethel has alleged that he was "not free to leave" and was "placed on the detention journal" at the police station, 2d Am. Compl. ¶ 55, the Court finds that Mr. Bethel has adequately pled that he was detained. *See Marshall v. Dist. of Columbia*, 391 A.2d 1374, 1381 (D.C. 1978) ("Confinement, no matter how brief, suffices to establish a prima facie case of false arrest.").

7

basis of knowingly false statements or statements made with reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). MPD suggests that because Plaintiff "does not allege—in any way other than conclusory fashion—that Officer Rodriguez knowingly and intentionally, or with reckless disregard for the truth, included false statements in his affidavit" to secure the arrest warrant, the Court should dismiss the claim for false arrest. *See* MPD's Mot. Dismiss at 6.

The Court finds that, at this early stage of the litigation, Plaintiff has sufficiently alleged that his arrest was unlawful. Plaintiff's chief complaint is that Defendant Rodriguez subjected him "to an unlawful arrest made without probable cause and/or based on false affidavits." 2d Am. Compl. ¶ 36. He avers that Defendant Rodriguez failed to corroborate the facts provided by Defendant Benton prior to seeking a warrant. *Id.* ¶¶ 34–36. Construed in the light most favorable to Plaintiff, as the Court must do at this stage, these allegations plausibly state a claim for false arrest because they suggest a lack of probable cause and undermine the validity of any arrest warrant.[7] *See Liser*, 254 F. Supp. 2d at 97 ("[W]hile an objectively reasonable mistake of fact can legally support a determination of probable cause, a mistake that is the product of the government's willful ignorance, investigative negligence, or is otherwise unreasonable, cannot."). Whether Defendant Rodriguez acted unreasonably,[8] actually made knowingly false

---

[7] Plaintiff suggests in opposition that no arrest warrant ever existed. *See* Pl.'s Opp'n at 19. This allegation, however, does not appear in the Proposed Second Amended Complaint. It therefore plays no role in the Court's analysis.

[8] The Court notes that probable cause may exist in scenarios, like this one, where the officer apparently relied solely on the testimony of a purported eyewitness and such reliance was reasonable. *See Daniels v. United States*, 393 F.2d 359, 361 (D.C. Cir. 1968) (finding probable cause based on purported eyewitness testimony "who it seem[ed] reasonable to believe [wa]s telling the truth"); *Page v. Mancuso*, 999 F. Supp. 2d 269, 279–80 (D.D.C. 2013) (finding, at summary judgment stage, probable cause based on statements of eyewitnesses). "Probable cause exists where the arresting officer possesses information 'sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense.'" *United States v. Catlett*,

statements, or acted with reckless disregard for the truth is a question best left for a later stage on a more fulsome factual record. *See id.*, 254 F. Supp. 2d at 96–100 (examining false arrest claim, including objective and subjective reasonableness of police action, at summary judgment stage); *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 256–58 (D.D.C. 2018) (denying summary judgment on false arrest claim to allow jury to assess reasonableness of officer's behavior); *see also Moorehead v. Dist. of Columbia*, 747 A.2d 138, 147 (D.C. 2000) (explaining that whether probable cause existed is a mixed question of law and fact). Therefore, the Court denies MPD's motion with respect to Count Thirteen.

### C. Malicious Prosecution

MPD states that Plaintiff's claim of "malicious prosecution is dead on arrival" because he does not allege that an "underlying suit" was instituted against him. MPD's Mot. Dismiss at 7. To establish a case of malicious prosecution, a plaintiff must show:

> (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) 'Malice,' or a primary purpose in instituting the proceeding other than that of bringing an offender to justice.

*DeWitt v. Dist. of Columbia*, 43 A.3d 291, 296 (D.C. 2012) (quoting *Jarrett v. Walker*, 201 A.2d 523, 526 (D.C. 1964)). In support of its argument, MPD cites a slightly different formulation of the elements of a malicious prosecution claim that replaces the words "a criminal proceeding" with "the underlying suit." *See* MPD's Mot. Dismiss at 6–7 (quoting *Joeckel v. Disabled Am.*

---

97 F.3d 565, 573 (D.C. Cir. 1996) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Although the Court cannot conclude at this stage whether probable cause existed in this case, the facts may ultimately show that Defendant Rodriguez "conducted an appropriately thorough investigation, and the facts as []he knew them would have led a reasonable officer to conclude that there was probable cause to arrest [Plaintiff]." *Page*, 999 F. Supp. 2d at 281; *see also Liser*, 254 F. Supp. 2d at 99 (granting summary judgment for officer even where his "ultimate judgment that probable cause existed was misguided" because his "belief that such probable cause supported plaintiff's arrest was entirely understandable").

*Veterans*, 793 A.2d 1279, 1282 (D.C. 2002)).  Because Plaintiff does not allege that an underlying suit was brought against him, MPD argues his claim fails.  *See id.*

The Court agrees.  Under either formulation, the key "issue in a malicious prosecution case is not whether there was probable cause for the initial arrest, but whether there was probable cause for the underlying suit."  *Amobi v. Dist. of Columbia Dep't of Corrections*, 755 F.3d 980, 992 (D.C. Cir. 2014) (quoting *Pitt v. Dist. of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007)).  The D.C. Circuit has recognized, analyzing D.C. law, that in the criminal context "the critical event triggering liability for malicious prosecution is the filing of an information."  *Dellums v. Powell*, 566 F.2d 216, 220 (D.C. Cir. 1977).  Although Plaintiff has alleged that the police lacked probable cause to obtain a warrant for his arrest, undergirding his claim for *false arrest*, he has not alleged any facts that suggest the existence of an underlying criminal suit or the filing of an information against him, satisfying the requirement for a claim of *malicious prosecution*.  Indeed, Plaintiff's complaint acknowledges that after some questioning at the police station he was allowed to leave.  *See* 2d Am. Compl. ¶ 56.  He makes no allegations of any further contact with police.  Because Plaintiff has not pled facts speaking to an essential element, he has failed to plead a plausible claim for malicious prosecution.  Accordingly, the Court will dismiss Count Fourteen.

### D.  Negligence

To state a claim of negligence a plaintiff must allege the existence of "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach."  *Dist. of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001) (quoting *Turner v. Dist. of Columbia*, 532 A.2d 662, 666 (D.C. 1987)).  MPD argues that Plaintiff's negligence claim should be dismissed for two reasons.

First, MPD argues that because Plaintiff's negligence claim rests on allegations that Defendant Rodriguez failed to adhere to MPD policies and procedures, and because "polices and procedures cannot, in and of themselves, establish a standard of care for asserting a negligence claim," MPD's Mot. Dismiss at 8 (citing *Clark v. Dist. of Columbia*, 708 A.2d 632, 636 (D.C. 1997)), Plaintiff's pleading is deficient, *see id.*  Plaintiff argues in opposition that his theory is not that Defendant Rodriguez's alleged failure to adhere to MPD policies constitutes negligence *per se*, but rather that the internal policies serve as "competent evidence of the national standard of care." Pl.'s Opp'n at 28.  Plaintiff contends that his allegation is that Defendant Rodriguez failed to exercise the standard of care of a reasonable, prudent, and cautious police officer. *Id.* at 27.

The Court agrees that Plaintiff's negligence claim is sufficiently pled.  The Proposed Second Amended Complaint (and the previous iterations of the complaint) states that MPD's policies and procedures "provide that search and arrest warrants shall only be issued and served based on probable cause that would lead a reasonable, prudent, and cautious police officer to believe a crime has been committed." 2d Am. Compl. ¶ 107.  Plaintiff alleges, in essence, that Defendant Rodriguez failed to behave as a reasonable, prudent, and cautious police officer by failing to conform his behavior with MPD's policies and procedures.  *See id.* ¶¶ 107–10.  For purposes of notice pleading, these allegations sufficiently invoke the uniform standard of care for suits against police officers: "that of a reasonable police officer under the circumstances." *Sherrod v. McHugh*, No. 16-cv-816, 2017 WL 627377, at *6 (D.D.C. Feb. 15, 2017) (citing *Kenley v. Dist. of Columbia*, 83 F. Supp. 3d 20, 44 (D.D.C. 2015)); *see also id.* ("MPD policies are relevant standards for determining how a reasonable officer would have behaved under the circumstances.").  Plaintiff has alleged that Defendant Rodriguez breached his duty by allegedly

failing to thoroughly investigate, failing to corroborate Defendant Benton's statements, and obtaining an arrest warrant based on false statements and without probable cause. *See* 2d Am. Compl. ¶¶ 105–12. "At this stage of the proceedings, before expert witnesses have been identified and expressed their opinions about the applicable standard of care, no more is required." *Sherrod*, 2017 WL 627377, at *6.

Second, MPD argues that the public duty doctrine bars Plaintiff's negligence claim. MPD's Mot. Dismiss at 11–13. "Under the public duty doctrine, the District of Columbia has no duty to provide public services to any particular citizen." *Allison Gas Turbine v. Dist. of Columbia*, 642 A.2d 841, 843 (D.C. 1994). "[T]he duty to provide public services is owed to the public at large, and absent a special relationship between the [government agency] and an individual, no specific legal duty exists." *Id.* MPD suggests that Plaintiff's negligence claim is barred because "[t]he public duty doctrine 'covers instances where the plaintiff contends that a defendant police officer "failed to do what reasonably prudent police employees would have done in similar circumstances."'" MPD's Mot. Dismiss at 12 (quoting *McGaughey v. Dist. of Columbia*, 734 F. Supp. 2d 14, 18 (D.D.C. 2010) (quoting *Warren v. Dist. of Columbia*, 444 A.2d 1, 3 (D.C. 1981) (en banc))). This overbroad articulation of the doctrine would absurdly absolve police employees from negligence claims in almost all scenarios. Plaintiff argues in opposition that the public duty doctrine is inapplicable to this case because his claim does not concern a duty owed to the public at large but rather "a duty to conduct a full and complete investigation of individual allegations against him." Pl.'s Opp'n at 37.

The Court agrees with Plaintiff; the public duty doctrine is inapplicable to this case. As explained by the court in *Liser*, "[t]he public duty doctrine 'deals with the question whether public officials have a duty to protect individual members of the general public against harm

from third parties or other independent sources.'" *Liser*, 254 F. Supp. 2d at 102. The doctrine "is wholly inapposite in a case such as this, where the alleged harm was brought about directly by the officer[] [himself], and where there is no allegation of a failure to protect." *Id.* (citing *Dist. of Columbia v. Evans*, 644 A.2d 1008, 1017 n.8 (D.C. 1994) (holding that the doctrine has "no relevance" in a police shooting case in which plaintiff was injured directly by police officers)). The cases cited by MPD all concerned claims of a failure to protect or a failure to take some affirmative action. *See McGaughey*, 734 F. Supp. 2d at 19–20 (applying doctrine to claims that police "negligently responded to [the plaintiff's] report of sexual assault"); *Miller v. Dist. of Columbia*, 841 A.2d 1244, 1248 (D.C. 2004) (holding that "the actions of police during a rescue operation are protected by the public duty doctrine"); *Taylor v. Dist. of Columbia*, 776 A.2d 1208, 1210 (D.C. 2001) (analyzing claims of "negligence in failing to properly protect"); *Allison Gas Turbine*, 642 A.2d at 843–46 (applying doctrine in case involving a water rescue operation); *Morgan v. Dist. of Columbia*, 468 A.2d 1306, 1316–19 (D.C. 1983) (applying doctrine to claims of a negligent failure to protect); *Warren*, 444 A.2d at 1 (affirming decision "that the police were under no specific legal duty to provide protection to the individual appellants"). Here, in contrast, Plaintiff alleges that Defendant Rodriguez negligently failed to investigate this case and corroborate the account provided by Defendant Benton, which led to Plaintiff's alleged injuries. *See* 2d Am. Compl. ¶¶ 105–12. The public duty doctrine does not apply to his claims.

Because the Court finds that Plaintiff has sufficiently alleged his negligence claim and that the public duty doctrine does not apply to this case, the Court will deny MPD's motion to dismiss with respect to Count Fifteen.

### E. Negligent Infliction of Emotional Distress

A plaintiff can recover for negligent infliction of emotional distress under the so-called "zone of physical danger" rule "if the defendant's actions caused the plaintiff to be 'in danger of physical injury' and if, as a result, the plaintiff 'feared for his own safety.'" *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796 (D.C. 2011) (quoting *Williams v. Baker*, 572 A.2d 1062, 1066 (D.C. 1990) (en banc)).[9] For a plaintiff "to be in the actual zone of danger, a defendant must have 'actually expose[d] [the plaintiff] to danger.'" *Sherrod*, 2017 WL 627377, at *7 (quoting *Arias v. DynCorp*, 752 F.3d 1011, 1018 (D.C. Cir. 2014)). "A classic example is that of a reckless driver who speeds past a pedestrian, missing her only by inches." *Arias*, 752 F.3d at 1017. MPD argues, among two other reasons,[10] that Plaintiff fails to state a plausible negligent infliction of emotional distress claim because he fails to plead facts that show he was in the zone of physical danger. MPD's Mot. Dismiss at 9. Plaintiff claims in response that he "was placed in a zone of danger" after he turned himself in to the police station. Pl.'s Opp'n at 32.

---

[9] The court in *Hedgepeth* determined "that the 'zone of physical danger' rule should not preclude a plaintiff's recovery for negligently inflicted emotional distress where other factors in an existing relationship . . . are more adequate to define, and are also adequate to limit, the defendant's responsibilities." *Id.* at 810. Although the zone of physical danger test "continues to be generally applicable to claims of negligent infliction of emotional distress," the court found that the duty to avoid negligent infliction of emotional distress will apply "where the defendant has an obligation to care for the plaintiff's emotional well-being or the plaintiff's emotional well-being is necessarily implicated by the nature of the defendant's undertaking to or relationship with the plaintiff, and serious emotional distress is especially likely to be caused by the defendant's negligence." *Id.* at 792. Plaintiff does not allege, or argue, that his relationship with Defendant Rodriguez involved an obligation to care for his emotional well-being. Thus, the generally applicable "zone of physical danger" rule applies to this case.

[10] MPD also argues that Plaintiff's claim fails because Defendant Rodriguez obtained a valid arrest warrant and because Plaintiff "has failed to adequately plead a claim of negligence." MPD Mot. Dismiss at 9. Because the Court agrees that Plaintiff has failed to allege that he was in the zone of physical danger, it need not address MPD's other arguments.

The Court agrees with MPD.  Although Plaintiff claims that he "was not free to leave" the police station, and that he "was placed on the detention journal," 2d Am. Compl. ¶ 55, he does not allege facts that plausibly show he was in danger of physical injury.  Plaintiff claims in conclusory fashion that he "experience[d] extreme fear for his physical safety when he learned that he could go to jail for the nonviolent act of physical shoplifting," *id.*, but the pled facts do not suggest that Plaintiff had reason to fear for his physical safety.  The zone of physical danger test is stringent in order to align with the "strong public policy considerations [that] counsel against imposing 'virtually infinite liability' for negligent conduct."  *Mackey v. United States*, 8 F.3d 826, 831 (D.C. Cir. 1993) (quoting *Cauman v. George Washington Univ.*, 630 A.2d 1104, 1107 (D.C. 1993)).  Plaintiff's pleading does not plausibly meet the stringent test.

Plaintiff cites *Sherrod* in support of his opposition, but that case dealt with a far different factual scenario.  *See* Pl.'s Opp'n at 32–33.  There, the plaintiffs alleged that police conducted a search of their home that caused them to believe they were experiencing a home invasion.  *Sherrod*, 2017 WL 627377, at *8.  The police "allegedly did not announce their presence and conducted the search during the night."  *Id.*  This Court concluded, on those alleged facts, that the defendants' actions caused the plaintiffs "to reasonably fear for their safety and expect unwanted physical touching during the course of a brazen home invasion."  *Id.*  Plaintiff's allegations do not present an analogous situation of potential physical danger, making the conclusion in *Sherrod* inapposite.

Because Plaintiff has not alleged sufficient facts to show that he was in a zone of physical danger, he has failed to plead a plausible claim of negligent infliction of emotional distress.  Therefore, the Court will grant MPD's motion to dismiss with respect to Count Sixteen.

### F.  Intentional Infliction of Emotional Distress

"To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show '(1) extreme and outrageous conduct on the part of the defendant[], which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213, 1260 (D.C. 2016) (quoting *Williams v. Dist. of Columbia*, 9 A.3d 484, 493–94 (D.C. 2010)).  The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Williams*, 9 A.3d at 494 (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)).

MPD argues that "[t]his very demanding standard," MPD Mot. Dismiss at 10 (quoting *Cooke-Seals v. Dist. of Columbia*, 973 F. Supp. 184, 186 (D.D.C. 1997)), is not met because Plaintiff "fails to specify the conduct in question," *id.*  Moreover, MPD suggests that if the Court considers all of Defendant Rodriguez's conduct, the demanding standard of intentional infliction of emotional distress is not plausibly met.  *Id.*  Plaintiff claims that because Defendant Rodriguez lacked probable cause to seek an arrest warrant and his actions led "the warrant squad to go after" Plaintiff, causing him fear and anxiety, the claim should survive.  Pl.'s Opp'n at 34.  He also asserts that an intentional infliction of emotional distress claim can survive based on outrageous conduct that consists "of the abuse of a position of authority, particularly by . . . police officers." *Id.* (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1314 (D.C. 1994)).

The Court again agrees with MPD; Plaintiff has not alleged sufficiently outrageous conduct for his intentional infliction of emotional distress claim to survive dismissal.  *See Williams*, 9 A.3d at 494.  Plaintiff alleges that Defendant Rodriguez failed to fully investigate this case before seeking and obtaining an arrest warrant.  *See* 2d Am. Compl. ¶¶ 31–42.

16

Although the Court has concluded that the factual allegations make out a plausible claim for negligence, they do not establish conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Williams*, 9 A.3d at 494.  The allegations in this case do not compare to cases where courts have sustained claims of intentional infliction of emotional distress against police officers.  *See Drejza*, 650 A.2d at 1316 (holding claim should survive summary judgment where police officer allegedly "continuously laughed," "snickered," "treated [] with derision," and "bullied" woman who had been raped an hour earlier); *Carter v. Dist. of Columbia*, 795 F.2d 116, 119 (D.C. Cir. 1986) (finding claim should survive summary judgment that involved police brandishing their weapons and physically assaulting the plaintiffs while shouting racial slurs and threats to kill).  Because Plaintiff has not alleged sufficiently outrageous conduct, the Court will grant MPD's motion to dismiss with respect to Count Seventeen.

### G.  Defamation Per Se

A claim of defamation requires proof of four elements: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Bean v. Gutierrez*, 980 A.2d 1090, 1093 n.2 (D.C. 2009) (quoting *Blodgett v. Univ. Club*, 930 A.2d 210, 222 (D.C. 2007)).

MPD's sole argument for dismissal of Plaintiff's defamation claim is that he "fails to identify what statements Officer Rodriguez made that were defamatory, instead referring

ambiguously to '[t]he Statements.'" MPD's Mot. Dismiss at 11 (quoting Am. Compl. ¶¶ 182–85). MPD claims that Plaintiff "fails to allege that Officer Rodriguez himself made any false statements in his warrant affidavit or any other time." *Id.* Plaintiff argues in opposition that Defendant Rodriguez obtained the arrest warrant "by making statements to a prosecutor and a neutral judge that were totally untrue." Pl.'s Opp'n at 35. Because Plaintiff claims that the language used in the warrant affidavit was "knowingly false," he claims that the defamation claim should survive. *Id.*

The Court finds that Plaintiff has sufficiently identified the allegedly defamatory statements and that, therefore, the claim survives MPD's motion to dismiss. Under D.C. law, a defamation claim will survive a motion to dismiss if it contains sufficient "identifying information" and "the substance of the alleged defamatory statement." *Williams*, 9 A.3d at 492. In *Crowley*, the D.C. Court of Appeals allowed a defamation claim to survive dismissal where the complaint set out "the substance of the alleged defamatory statement," the individuals to whom the statement was made, the name of the speaker, and the date of the alleged statement. *Crowley v. North Am. Telecomm. Ass'n*, 691 A.2d 1169, 1172 (D.C. 1997). In *Williams*, the court reiterated that a complaint that alleges "the substance of the alleged defamatory statement" and other identifying information should survive dismissal. *Williams*, 9 A.3d at 492. As in *Crowley* and *Williams*, here, read in the light most favorable to Plaintiff, the Proposed Second Amended Complaint contains sufficient identifying information about the alleged defamatory statements to state a claim. Plaintiff identifies the approximate date on which Defendant Rodriguez made the allegedly false statements (July 20, 2019), he identifies the speaker of the allegedly false statements (Defendant Rodriguez), and he indicates the document on which the allegedly false statements appeared (the affidavit for the arrest warrant). 2d Am. Compl. ¶ 42.

And although Plaintiff does not specifically identify the precise statements contained in the affidavit, *see id.* ("The facts supporting that affidavit for the arrest warrant [were] based upon false statements."), the substance of the alleged false statements is clear: that Plaintiff stole the air conditioner unit from Home Depot.[11]  Under the precedent established in *Williams* and *Crowley*, Plaintiff puts forth sufficient identifying information to survive MPD's motion to dismiss.  Accordingly, the Court will deny the motion with respect to Count Twenty.

\* \* \*

To summarize, first, the Court grants Plaintiff's motion to amend.  Second, the District of Columbia is substituted as the proper Defendant in place of MPD.  Third, MPD's motion to dismiss is denied with respect to Counts Thirteen, Fifteen, and Twenty.  And finally, Counts Fourteen, Sixteen, and Seventeen are dismissed.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend (ECF No. 11) is **GRANTED**.  MPD's Motion to Dismiss (ECF No. 12) is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 9, 2021                                                                  RUDOLPH CONTRERAS
                                                                                                       United States District Judge

---

[11] Of course, the facts may reveal that Defendant Rodriguez's affidavit only included the true statement that Defendant Benton told him that Plaintiff stole the air conditioner unit.  Moreover, although not raised by MPD, Defendant Rodriguez's statements in the warrant affidavit are likely subject to a qualified privilege for communications "made in good faith upon subject matter in which the party communicating or the party receiving the communication has a legitimate interest."  *Jackson v. Dist. of Columbia*, 541 F. Supp. 2d 334, 344 (D.D.C. 2008) (citing *Smith v. Dist. of Columbia*, 399 A.2d 213, 221 (D.C. 1979)).  Statements made in connection with seeking an arrest warrant may be subject to this qualified privilege and such statements are only actionable upon a showing of "excessive publication or express malice."  *Id.*