**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LARRY BETHEL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-1940 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 26, 38 |
| | : | | |
| JOSE RODRIGUEZ, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

GRANTING IN PART AND DENYING IN PART DEFENDANT RODRIGUEZ'S MOTION TO DISMISS;
GRANTING DEFENDANT BENTON'S PARTIAL MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Larry Bethel states in his complaint that, one month after purchasing an air conditioning unit from Home Depot, he learned that a warrant for his arrest had been issued for stealing the product. Bethel turned himself in to the Metropolitan Police Department ("MPD") and the warrant was never served. He then filed this suit against Defendants Jose Rodriguez, the police officer that secured the warrant for his arrest, the MPD, Nelson Benton, an asset protection specialist for Home Depot, and Home Depot U.S.A. alleging violations of his Fourth Amendment rights, among other claims. Additionally, he claims that "as a direct and proximate result of Defendants' wrongful conduct, [he] suffered significant emotional pain, suffering, fear and shame." *See* 2d Am. Compl. ¶ 39, ECF No. 11-2.

Now pending before the Court are two motions to dismiss. Rodriguez moves to dismiss Bethel's amended complaint for failure to timely serve. In the alternative, Rodriguez asks this Court to dismiss Counts Seven (Malicious Prosecution), Eight (Assault), Ten (Negligent Infliction of Emotional Distress ("NIED")), and Eleven (Intentional Infliction of Emotional

Distress ("IIED")) of Bethel's Second Amended Complaint against him arguing that Bethel

failed to state a cause of action for these claims.  Additionally, Benton moves for Counts Three

(Fourth Amendment via 42 U.S.C. § 1983—Searches, Seizures and Arrests), Four (Fourth

Amendment via 42 U.S.C. § 1983—Malicious Prosecution), Seven (Malicious Prosecution), and

Eleven (Intentional Infliction of Emotional Distress) of Bethel's Second Amended Complaint

against him to be dismissed for failure to state a cause of action.  For the reasons given below,

the Court denies Rodriguez's motion to dismiss for failure to timely serve, instead granting

Bethel a retroactive extension for service of process.  In the alternative, the Court grants

Rodriguez's partial motion to dismiss Counts Seven, Ten, and Eleven, and denies the motion to

dismiss Count Eight.  The Court also grants Benton's partial motion to dismiss.  *See* Def.

Rodriguez Mot. Dismiss Am. Compl. ("Rodriguez Mot."), ECF No. 38; Def. Benton's Mot.

Partial Dismissal Pl.'s Second Am. Compl. ("Benton Mot."), ECF No. 26.

## II.  FACTUAL BACKGROUND

As alleged in the Second Amended Complaint, this case stems from an incident that

occurred on July 19, 2019, after Plaintiff purchased an air conditioning unit at a Home Depot

retail store in Northeast Washington, D.C.  *See* 2d Am. Compl. ¶ 16.  On this day, Defendant

Benton was working as an Asset Protection Specialist at this Home Depot location.  Once

Plaintiff entered the store, "he was brought under electronic surveillance by Defendant Benton,"

and he "was monitored by Defendant Benton from a location inside the Home Depot."  *Id.* ¶ 17.

Plaintiff claims that he brought an air conditioning unit to the register, and after paying for it,

noticed that the product was damaged.  *Id.* ¶ 18.  The cashier instructed him to pick out another

unit.  Plaintiff complied and, because the original unit had already been paid for, he was told he

was free to leave with the new product.  *Id.*  At this point, Defendant Benton made no attempt to

stop Plaintiff from leaving the store, and Plaintiff drove away in his gold-colored Toyota.  *Id.* ¶¶ 21, 23.

The next day, Benton reported the incident to Rodriguez, an officer with the Metropolitan Police Department, and claimed "that Plaintiff Bethel had stolen the air conditioner."  *Id.* ¶ 24.  Benton conveyed the Toyota's license plate number to Defendant Rodriguez.  *Id.* ¶ 23.  Plaintiff alleges that Defendant Benton knew that he was falsely claiming the air conditioner was stolen because he had access to video footage that showed Plaintiff purchasing the unit.  *Id.* ¶ 24.

A month later, at 7:30 A.M. on August 20, 2019, officers arrived at Plaintiff's residence with an arrest warrant.  *Id.* ¶¶ 42–43.  Plaintiff was not present when the officers arrived, but family members later informed him of the warrant, and Plaintiff eventually agreed to turn himself in, though he was never officially served with the arrest warrant.  *Id.* ¶ 52–53.  Plaintiff claimed that he "was fearful and not free to leave the station."  *Id.* ¶ 55.  Plaintiff was not held overnight and was eventually told, "he could leave the police station but should be wary as arrest[] warrants could remain in the system."  *Id.* ¶ 56.  Since his interactions with the Metropolitan Police Department and learning of the warrant for his arrest, Plaintiff claims to have received professional treatment for both his mental and physical health and has been diagnosed with Post Traumatic Stress Disorder.  *Id.* ¶ 57.

Based on the facts alleged in the complaint, Plaintiff filed a twenty-one-count complaint against the four defendants.  *See id.* ¶¶ 58–190.  Six counts are directed at "Defendant District of Columbia."  *See id.* ¶¶ 128–36 (false arrest); *id.* ¶¶ 137–44 (malicious prosecution); *id.* ¶¶ 145–53 (negligence); *id.* ¶¶ 154–62 (negligent infliction of emotional distress); *id.* ¶¶ 163–70 (intentional infliction of emotional distress); *id.* ¶¶ 181–85 (defamation per se).  Defendant

Rodriguez moved for dismissal of all claims against him for failure to timely serve and Counts

Seven, Eight, Ten, and Eleven for failure to state a claim, and Defendant Benton moved for

dismissal of Counts Three, Four, Seven, and Eleven for failure to state a claim.

## III.  LEGAL STANDARDS

### A.  Motion to Dismiss for Failure to Timely Serve

Plaintiffs must effect proper service of process on defendants within 90 days of filing a

complaint.  Fed. R. Civ. P. 4(m).  And plaintiffs have the burden of proving proper service.  Fed.

R. Civ. P. 4(*l*); *accord Mann v. Castiel*, 729 F. Supp. 2d 191, 194 (D.D.C. 2010), *aff'd*, 681 F.3d

368 (D.C. Cir. 2012).  "If a defendant is not served within 90 days after the complaint is filed,

the court—on motion or on its own after notice to the plaintiff—must dismiss the action without

prejudice against that defendant or order that service be made within a specified time."  Fed. R.

Civ. P. 4(m).  "[I]f the plaintiff shows good cause for the failure, the court must extend the time

for service for an appropriate period."  *Id.*

While Rule 4(m) mandates granting an extension when good cause is shown, the Court

also has discretion to grant an extension in the absence of such an explanation.  *See* Fed. R. Civ.

P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on

motion or on its own after notice to the plaintiff—must dismiss the action without prejudice

against that defendant *or order that service be made within a specified time.*" (emphasis added)).

There is "no hard list of considerable factors" to consider when deciding if a discretionary

extension is warranted.  *Mann*, 729 F. Supp. 2d at 198.  However, "[t]his court, in previous

cases, has attempted to balance the hardships that the plaintiff and defendants face."  *Johnson v.

Ashcroft*, No. 04-1158 (RMU), 2005 WL 2073752, at *3 (D.D.C. Aug. 17, 2005).  "[I]n the

interests of judicial economy," the court can decline to dismiss a case for improper service if "the

court has no indication that granting the plaintiff extra time to perfect service works great prejudice on [the defendant]." *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 (D.D.C. 2004).

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Cause of Action

To prevail on a motion to dismiss for failure to state a claim, a plaintiff need only provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits, but rather "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that

are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.  "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## IV.  ANALYSIS

Rodriguez moved for the case against him to be dismissed for failure to timely serve, or in the alternative, for Counts Seven, Eight, Ten, and Eleven to be dismissed for failure to state a claim.  Benton moved to dismiss Counts Three, Four, Seven, and Eleven for failure to state a claim.  The Court denies Rodriguez's motion to dismiss on service grounds and instead grants both motions to dismiss the particular claims for failure to state a claim, except for the claim against Rodriguez for assault.

### A.  Rodriguez's Motions to Dismiss

#### 1.  Failure to Timely Serve

Plaintiff failed to timely serve Defendant Rodriguez in accordance with the Federal Rules of Civil Procedure.  Rule 4(m) of the Federal Rules of Civil Procedure states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  The rule, however, allows for an exception, "if the plaintiff shows good cause for the failure."  *Id.*  Once good cause is established, the court is required to extend the period of time allowed for service of process.  *Id.*  In the District of Columbia, "[g]ood cause exists 'when some outside factor . . . rather than inadvertence or negligence, prevented service."  *Mann*, 681 F.3d at 374 (quoting

*Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007)).  Rule 4(m) does allow the court to grant a discretionary extension even when a plaintiff fails to establish good cause for the delay.  Factors that a court may consider when deciding to grant an extension in the absence of good cause include "whether the defendants show any actual harm on the merits of the suit caused by the delay in service."  *Johnson*, 2005 WL 2073752, at *3.  This is consistent with the "clear preference of the Federal Rules to resolve disputes on their merits," rather than technicalities such as delayed service.  *Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F. 3d 476, 482 (D.C. Cir. 2016).

Rule 4(m) states that the time limit for service ends "90 days after the complaint is filed." Fed. R. Civ. P. 4(m).  The rule does not specify if this applies only to the initial complaint or if the timeline is affected by the filing of an amended complaint.  However, it has been interpreted to refer only to the date of the initial filing.  *See Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1148 (10th Cir. 2006) (holding that the filing of an amended complaint does not reset the time limit for service established by Rule 4(m) "except as to those defendants newly added in the amended complaint"); *accord Bozgoz v. Haynes*, 2020 WL 4462980, at *2 (D.D.C. Aug. 4, 2020).

Here, Plaintiff filed his initial complaint on July 17, 2020, meaning the window for proper service closed on October 15, 2020.  *See* Compl., ECF No. 1.  Yet, by Plaintiff's own admission, the Office of Counsel for the Metropolitan Police Department did not acknowledge receipt of the summons and complaint on Rodriguez's behalf until July 23, 2021.  *See* Pl.'s Reply to Opp'n to Mot. to Dismiss ("Rodriguez Opp'n") at 1, ECF No. 39.  This far exceeds the 90-day time period outlined in the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 4(m). Rodriguez alleges that Plaintiff did not make an effort to serve him until almost ten months after

the complaint was filed.  Rodriguez Mot. at 1.  Bethel does not argue that the timeline for service

of process should be revised based on the filing date of his amended complaint.  But, regardless,

Bethel did not even properly serve Rodriguez within 90 days of the filing of the amended

complaint.

While Plaintiff does not make explicit reference to Rule 4's good cause exception, he

does assert that "efforts of Plaintiff to serve Defendant Rodriguez were thwarted by the

Pandemic and the evasive tactics taken by Defendant Rodriguez and members of the

Metropolitan Police Department."  Rodriguez Opp'n at 1.  For instance, Plaintiff claims that the

Office of the Attorney General was closed, "presumably due to the Covid 19 pandemic," and that

Defendant Rodriguez was off duty for an unspecified length of time for the same reason.  *Id.* at

9.  This argument is insufficient because any complications caused by the ongoing pandemic or

trouble locating the defendant could have been addressed if Plaintiff had asked for an extension

to serve Defendant Rodriguez, which he failed to do.  Plaintiff explains that he did not seek an

extension "because he believed that he had clearly given Defendant Rodriguez notice of the law

suit." *Id.* at 16.  This belief was based on the fact that the Office of the Attorney General filed a

motion to dismiss Bethel's complaint on September 4, 2020. *Id.* ¶ 61.  But, as Rodriguez points

out, "[p]laintiff cites no authority supporting his position, and his 'belief' appears to have been

based on nothing more than a misunderstanding of the rules governing service of process."  Def.

Rodriguez's Reply Pl.'s Opp'n Def. Mot. Dismiss ("Rodriguez Reply") at 1, ECF No. 40.

While Bethel has failed to establish a good cause reason for delayed service, the Court

can use its discretion to grant an extension and deny Rodriguez's motion to dismiss on this

ground. Fed. R. Civ. P. 4(m).  Rodriguez has not shown how the late service prejudiced him in

any way or had a substantial impact on the merits of the case.  Dismissing the case without

prejudice to allow Bethel to effectuate proper service after Rodriguez already accepted service via MPD's Office of Counsel would cause an unnecessary delay in the case and would not be in the interest of "judicial economy." *Wilson*, 332 F. Supp. 2d at 89.  As such, the Court denies Rodriguez's motion to dismiss for failure to timely serve, and instead retroactively grants Bethel an extension for service of process *sua sponte*.

### 2.   Failure to State a Claim

Because Rodriguez's motion to dismiss for failure to timely serve is denied, the Court will instead consider his partial motion to dismiss Counts Seven, Eight, Ten, and Eleven on the merits.  Rodriguez argues that Bethel failed to state a claim for malicious prosecution, negligent infliction of emotional distress (NIED), and intentional infliction of emotional distress (IIED), and argues that these counts should be dismissed for the same reasons they were dismissed against MPD.  Rodriguez Mot. at 6.  Rodriguez also argues that Bethel failed to state a claim for assault and that Rodriguez is entitled to a qualified privilege.  *Id.* at 6–7.  In his opposition, Bethel does not put forth any arguments supporting Counts Seven, Ten, and Eleven.  *See* Rodriguez Opp'n.  In dismissing the malicious prosecution claim against MPD, this Court found that Bethel could not succeed because there was no underlying prosecution of suit.  *Bethel v. Rodriguez*, No. CV 20-1940 (RC), 2021 WL 1340961, at *4 (D.D.C. Apr. 9, 2021).  This Court also dismissed the NIED claim against MPD because Bethel failed to establish that he was ever at risk of physical injury, and the IIED claim because Bethel could not show that the police department's conduct was sufficiently outrageous.  *Id.* at *6–7.  Bethel alleges that Rodriguez "was a state actor acting under the color of law, custom or usage of the District of Columbia" "[a]t all relevant times," 2d Am. Compl. ¶ 60, and the facts alleged against Rodriguez are nearly identical to those alleged against MPD, *see generally* 2d. Am. Compl.  As such, this Court agrees

that Counts Seven, Ten, and Eleven can be dismissed against Rodriguez just as they were dismissed against MPD.

However, Bethel does present argument opposing dismissal of Count Eight, which alleges that the threat of arrest in this case constituted assault.  Despite the seemingly simple analysis proposed by Rodriguez, the issues here appear somewhat complex and would require further analysis to justify dismissal.  Bethel's theory of assault takes a domino-effect approach— or "'cat's paw' theory of assault liability," according to Rodriguez.  Rodriguez Mot. at 6.  Bethel alleges that Rodriguez is culpable for assault because (1) Rodriguez "negligently failed to investigate the [surveillance tape] evidence provided by Defendant Benton with reference to the false allegation that Plaintiff Bethel stole merchandise," 2d. Am. Compl. ¶ 31; (2) "[a]fter that review Defendant Rodriguez knew, or should have known, that the video did not corroborate the allegations," *id.* ¶ 40; (3) an arrest warrant was issued based on Rodriguez's investigation and his "false statements," *id.* ¶¶ 41–42; (4) officers went to Bethel's home to arrest him, but, finding only one of Bethel's relatives and another individual, the officers told them that they had an arrest warrant for Bethel and left one officer's business card for him, *id.* ¶¶ 43–51; (5) the relative later told Bethel "that he was wanted by the police, who had a warrant for his arrest," *id.* ¶ 52; (6) "[h]ad Plaintiff Bethel been home he would have most assuredly been touched by the police, frisked, . . . and handcuffed," *id.* ¶ 55, which would cause discomfort, lack of blood flow, pain, and numbness, Rodriguez Opp'n at 19; and (7) "Defendant Rodriguez knew or should have known that Plaintiff Bethel would be pursued by the warrant squad," 2d Am. Compl. ¶ 55.  The parties agree that an assault is "an intentional and unlawful attempt or threat, either by words or

acts, to do physical harm to the plaintiff."[1]  Rodriguez Opp'n at 19 (quoting *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997)); *accord* Rodriguez Mot. at 7.

Rodriguez makes only two brief arguments for dismissal of the assault claim.  First, he argues that "Plaintiff has failed to allege that he was assaulted at all, let alone by Defendant Rodriguez."  Rodriguez Mot. at 7.  Second, he argues that even if there were an assault, "the officers are entitled to a qualified privilege" because Plaintiff does not allege that they "were aware of any deficiency in the warrant for Plaintiff's arrest, and their actions . . . were reasonably necessary."  *Id.*  Neither argument is sufficiently fleshed out to justify dismissal.

On the first argument, Rodriguez does not explain why Bethel has failed to allege an assault.  Rodriguez's statement that Bethel "has failed to allege that he was assaulted at all" is devoid of any factual detail or case law support.  *See* Rodriguez Mot. at 7.  The only cases Rodriguez cites are for general statements of the law of assault and qualified privilege.  *See id.*  Rodriguez may be arguing that because he himself made no threat directly to Bethel, he cannot be liable for assault.[2]  Or perhaps Rodriguez is arguing that a mere threat of arrest, without more, cannot constitute assault as a matter of law.  Or perhaps that the intent requirement has not been alleged.  Some of these theories, or others, may ultimately justify dismissal.  But Rodriguez does not sufficiently build out any of these arguments.  *See Johnson v. Panetta*, 953 F. Supp. 2d 244,

---

[1] There appears to also be an imminence requirement for assault claims in the District of Columbia, but the parties do not address it and it is not necessary to resolve these claims.  *See Sherrod v. McHugh*, 334 F. Supp. 3d 219, 253 (D.D.C. 2018) ("[T]o successfully plead assault, a plaintiff must plausibly show that the defendant intentionally created an imminent apprehension of a harmful or offensive contact, and that the plaintiff did indeed experience such an apprehension." (cleaned up)).

[2] Although this was not specifically briefed, this appears to be incorrect.  *See Sherrod v. McHugh*, No. CV 16-0816 (RC), 2017 WL 627377, at *5 (D.D.C. Feb. 15, 2017) ("[I]f a defendant acts knowing with substantial certainty that his actions will cause a third party to create the apprehension of imminent harmful or offensive contact in another, he is liable for assault.").

250 (D.D.C. 2013) ("It is not the obligation of this Court to research and construct the legal arguments available to the parties.  To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (cleaned up)). Rodriguez's reply brief is no better, merely asserting again, without supporting authority, that Bethel fails to state a claim for assault and "fails to cite to any case upholding an assault claim of the type he has alleged."  Rodriguez Reply at 3.  But it is Rodriguez's burden to explain his purported grounds for dismissal, and he has not done so.  Bethel's theory is certainly attenuated, but Rodriguez has not demonstrated that it cannot possibly succeed.

On the second argument, regarding qualified privilege, Rodriguez again leaves too many questions unanswered to justify dismissal at this time.  Rodriguez argues that "the officers" of "the warrant squad" are entitled to "a qualified privilege to use reasonable force to effect an arrest," which in the context of an assault means asking "whether the officer's conduct was reasonably necessary."  Rodriguez Mot. at 7 (quoting *Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009); *Kotsch v. District of Columbia*, 924 A.2d 1040, 1048 (D.C. 2007)).  Even if this is true, Rodriguez does not explain how the warrant squad officers' entitlement to qualified privilege would extend to Rodriguez.  Rodriguez specifically points to the lack of allegations that the *warrant squad officers* "were aware of any deficiency in the warrant" to justify qualified privilege, Rodriguez Mot. at 7, but, as discussed above, there are indeed allegations that Rodriguez acted improperly, which Rodriguez leaves unaddressed.  This is sufficient to reject the motion on qualified privilege grounds, at least at this time.

Additionally, although Bethel's argument on qualified privilege goes a bit off topic and he does not appear to cite cases on point, he essentially argues that qualified privilege should not apply because of Rodriguez's conduct in procuring the arrest warrant, i.e., failing to investigate

before applying for the warrant, resulting in a warrant application that lacked probable cause. Rodriguez Opp'n at 20–21.  The standard quoted by Rodriguez merely requires "reasonably necessary" conduct by officers or "means" that "are not in excess of those which the actor reasonably believes to be necessary," Rodriguez Mot. at 7 (quoting *Kotsch*, 924 A.2d at 1048; *Scales*, 973 A.2d at 730), so the relationship between Bethel's argument and Rodriguez's argument is not immediately clear.  However, there does appear to be case law suggesting that the standard proffered by Rodriguez may not be applicable to assault claims if an arrest is unlawful.  A 1980 D.C. Court of Appeals case states: "*Even though the arrest was lawful*, a claim for assault and battery may be established if excessive force was used to maintain the arrest."[3] *Jackson v. District of Columbia*, 412 A.2d 948, 955 (D.C. 1980) (emphasis added); *see also Sherrod v. McHugh*, 334 F. Supp. 3d 219 (D.D.C. 2018) ("[E]ven if the warrant authorizing the search . . . was supported by an accurate affidavit indicating probable cause, the officers involved in that search . . . still could have committed an assault." (citing *Jackson*, 412 A.2d at 955)).  It therefore appears that Rodriguez's motion fails to address what standard applies to an alleged assault by an officer during an arrest that is not lawful.  And Bethel does appear to allege that Rodriguez had no probable cause and, therefore, the threat of arrest was unlawful.  He states that "Defendant Rodriguez and police officers acting on his behalf . . . without provocation or a reasonable or valid basis to do so, engaged in harmful and offensive conduct . . . when they demanded that Plaintiff surrender himself on an arrest warrant that Defendant Rodriguez knew, or should have known, was invalid."  2d. Am. Compl. ¶ 100.  Given that Rodriguez does not

---

[3] For "assault claims arising from arrests," the court concluded that "unless the threatened use of force is clearly excessive, an officer is protected against liability for assault." *Jackson*, 412 A.2d at 956.  A judge of this Court has stated that "use of the 'clearly excessive' standard is appropriate only where the arrest was lawfully made." *Dingle v. District of Columbia*, 571 F. Supp. 2d 87, 98 (D.D.C. 2008).

attempt to demonstrate in this motion that the arrest would have been lawful, for this motion to succeed he would have needed to demonstrate that even an unlawful arrest could not state a claim for assault under the facts alleged.

Bethel's theory that—because Rodriguez failed to consider the surveillance video— Rodriguez allegedly assaulted Bethel may have some gaps.  But, at this stage, Rodriguez has not presented sufficient arguments to demonstrate that Bethel cannot succeed on this count.  Thus, the Court denies Rodriguez's motion to dismiss Count Eight for assault.

### B.  Benton's Partial Motion to Dismiss for Failure to State a Claim

Benton has moved to dismiss Counts Three, Four, Seven, and Eleven of Bethel's second amended complaint as applied to him for failure to state a claim.  The motion is granted for the reasons given below.

#### 1. Plaintiff Fails to State a Fourth Amendment Claim Under 42 U.S.C. § 1983 (Count Three)

Benton argues that this claim fails because Bethel does not allege that Benton was a state actor as required under Section 1983.  Section 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of . . . the District of Columbia, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  For a claim to succeed under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  To be considered action under the color of state law, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged

with the deprivation must be a person who may fairly be said to be a state actor . . . because he has acted together with or has obtained significant aid from state officials." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982); *see also id.* at 935 n.18 (explaining that "state employment is generally sufficient" for the court to consider the defendant a state actor).

Bethel asserts that his Fourth Amendment rights under § 1983 were violated as a result of "searches, seizures, and arrests made without probable cause." 2d. Am. Compl. ¶ 71. Yet, the complaint only alleges that Rodriguez and the officers acting under his direction were responsible for Bethel's detention. *See id.* ¶ 73. In fact, Benton is not mentioned at all in Bethel's description of the allegations made in Count 3. *See id.* ¶¶ 70–75. Bethel's claim under 42 U.S.C. § 1983 rests on whether he sufficiently demonstrated that Benton was "acting under color of state law" in his role as an asset protection specialist. *West*, 487 U.S. at 48. In his complaint, Bethel only alleges that "[a]t all relevant times, *Defendant Rodriguez* was a state actor acting under the color of law, custom, or usage of the District of Columbia." *See* 2d. Am. Compl. ¶ 72 (emphasis added). He fails to allege any factual basis for the assertion that Benton, a Home Depot employee, was a state actor rather than a private citizen acting within the scope of his employment. *See id.*

Bethel later argues that Benton was responsible for his eventual detention because he "set in motion a series of events that harmed Plaintiff Bethel." *See* Pl.'s Opp'n Def. Benton's Mot. Partial Dismissal ("Benton Opp'n") at 13, ECF No. 29. Yet, Bethel did not address this argument in his amended complaint and only made this accusation in his opposition to Benton's Motion for Partial Dismissal. *Id.* Bethel further argues in his opposition that Benton was not simply a private citizen making a police report because he was commissioned as a special police officer and had the authority to "stop and detain and arrest on company property," making him a state

actor.  *Id.* at 13.  However, the Court may "consider only the facts alleged in the complaint," and Bethel's complaint contains no facts to support that Benton was a special police officer.  *EEOC*, 117 F.3d at 624.  As such, the Court finds that Bethel's Fourth Amendment claim for unlawful search and seizure against Benton is not sufficiently pleaded and Count Three will be dismissed.

   2.  Plaintiff Fails to State a Claim for Malicious Prosecution (Counts Four and Seven)

Benton argues that Counts Four and Seven for Malicious Prosecution should be dismissed because "Plaintiff has failed to allege that an underlying criminal suit or information was filed against him."  Benton Mem. P. & A. Supp. Def. Benton's Mot. ("Benton Mem.") at 7, ECF No. 26-1.  In Count Four, Bethel specifically alleges that Benton violated his Fourth Amendment rights protecting individuals from malicious prosecution under 42 U.S.C. § 1983. 2d Am. Compl. ¶¶ 76–81.  However, Bethel does not provide a separate legal standard for proving malicious prosecution under the Fourth Amendment, as opposed to the malicious prosecution claim addressed in Count Seven.  The D.C. Circuit established that "malicious prosecution is actionable under 42 U.S.C. § 1983 to the extent that the defendant's actions cause the plaintiff to be unreasonably 'seized' without probable cause, in violation of the Fourth Amendment."  *Pitt v. District of Columbia*, 491 F.3d 494, 511 (D.C. Cir. 2007).  But it is unnecessary to evaluate this Fourth Amendment standard for malicious prosecution because the same argument regarding action under the color of state law for Section 1983 claims applies as discussed above for Count Three.  *See* Benton Mem. at 5–6 ("Plaintiff has failed to plead facts sufficient to state this claim because, as argued above [regarding Count Three], the Second Amended Complaint does not allege, beyond bare conclusory allegations, that Benton took any action under color of state law required for a finding of liability under Section 1983.").  It is therefore only necessary to address the malicious prosecution claim in Count Seven.

> To establish a case of malicious prosecution, a plaintiff must show:
>
> (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) 'Malice,' or a primary purpose in instituting the proceeding other than that of bringing an offender to justice.

*DeWitt v. Dist. of Columbia*, 43 A.3d 291, 296 (D.C. 2012) (quoting *Jarrett v. Walker*, 201 A.2d 523, 526 (D.C. 1964)).  The key "issue in a malicious prosecution case is not whether there was probable cause for the initial arrest, but whether there was probable cause for the underlying suit." *Amobi v. Dist. of Columbia Dep't of Corr.*, 755 F.3d 980, 992 (D.C. Cir. 2014) (quoting *Pitt v. Dist. of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007)).  The D.C. Circuit has recognized, analyzing D.C. law, that in the criminal context "the critical event triggering liability for malicious prosecution is the filing of an information." *Dellums v. Powell*, 566 F.2d 216, 220 (D.C. Cir. 1977).

Bethel has alleged that Benton "initiated, procured, and advanced a criminal proceeding against Plaintiff Larry Bethel in the absence of probable cause" and that the defendants acted with "malicious intent." 2d Am. Compl. ¶ 93.  However, Bethel fails to state any fact supporting his assertion that there was an underlying criminal proceeding or filing of an information against him. *Id.*  In fact, "no copy of the arrest warrant was ever located or served on Plaintiff Bethel." *Id.* ¶ 56.  Bethel does not even allege that any kind of prosecution or suit was ever initiated against him. *See* 2d. Am. Compl.  The existence of an underlying criminal proceeding is an essential element of malicious prosecution. *DeWitt*, 43 A.3d at 296.  This Court has already dismissed a claim for malicious prosecution against MPD for Plaintiff's failure to establish this element. *Bethel v. Rodriguez*, No. CV 20-1940 (RC), 2021 WL 1340961, at *5 (D.D.C. Apr. 9, 2021).  Here, Bethel has not alleged any facts to establish that Benton was acting under color of state law, nor that there was an underlying criminal proceeding serving as the basis for a

malicious prosecution claim.  As such, the Court will dismiss both Counts Four and Seven against Defendant Benton.

3.  Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress (Count Eleven)

Benton argues that Bethel fails to state a claim for IIED because the conduct he alleges is not sufficiently outrageous.  Bethel alleges that "[a]s a direct and proximate result of Defendants' wrongful conduct . . . [he] suffered significant and enduring emotional pain and suffering, anxiety, fear and shame."  2d Am. Compl. ¶ 124.  He asserts that this "constitutes the intentional infliction of emotional distress in violation of the common law of the District of Columbia."  *Id.* ¶ 122.  "To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show '(1) extreme and outrageous conduct on the part of the defendant[], which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1260 (D.C. 2016) (quoting *Williams v. Dist. of Columbia*, 9 A.3d 484, 493–94 (D.C. 2010)).  The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Williams*, 9 A.3d at 494 (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)).

Here, the Court agrees with Benton that Bethel has not described conduct on the part of the defendant that would rise to the level of "extreme and outrageous" and support a claim of IIED.  Bethel vaguely alludes to Benton's "continuous and relentless use of the legal system to harass and persecute Plaintiff Bethel in bad faith and without probable cause."  2d Am. Compl. ¶ 124.  However, the only action that Bethel accuses Benton of is notifying the Metropolitan Police Department of the alleged theft without "review[ing] all of the evidence."  2d Am. Compl. ¶ 29.  Benton's actions do not compare to cases where courts have sustained IIED claims against

police officers.  *See, e.g.*, *Drejza v. Vaccaro*, 650 A.2d 1308, 1316 (D.C. Cir. 1994) (holding that IIED claim should survive summary judgment where police officer allegedly "continuously laughed," "snickered," "treated [] with derision," and "bullied" woman who had been raped an hour earlier).  This court has already dismissed an IIED claim against MPD, which was focused on Rodriguez's conduct.  *Bethel*, 2021 WL 1340961, at *7.  Considering Benton's only relevant action was reporting Bethel to the police department, his conduct appears no more extreme or outrageous than Rodriguez's.

In his opposition, Bethel argues that Benton "knew, or should have known, that [he] was particularly susceptible to emotional distress . . . due to his age and [lack of] experience with the criminal justice system."  Benton Opp'n at 16.  It is true that otherwise benign actions can be considered "extreme and outrageous" depending on "the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity."  *Drejza*, 650 A.2d at 1313.  However, Bethel fails to establish any condition that would have made him vulnerable to emotional distress.  2d Am. Compl. ¶¶ 120–24.  Old age and lack of a criminal record, even if they were alleged in the complaint, are quite different from the types of "physical or mental condition[s] or peculiarit[ies]" that courts have found to be relevant in IIED cases.  *See, e.g.*, *Drejza*, 650 A.2d at 1313 (finding that a victim was susceptible to emotional distress because she had "endured a violent rape" just one hour before she was interviewed by the police and "had probably been severely traumatized").

Bethel has not alleged sufficient outrageous conduct or established a susceptibility to emotional distress.  As such, the Court will grant Benton's motion to dismiss Count Eleven.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Rodriguez's Motion to Dismiss (ECF No. 38) Counts Seven, Ten and Eleven, **DENIES** Defendant Rodriguez's Motion to Dismiss Count Eight, and **GRANTS** Defendant Benton's Partial Motion to Dismiss (ECF No. 26).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 31, 2022

RUDOLPH CONTRERAS
United States District Judge