**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LARRY BETHEL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-1940 (RC) |
| | : | | |
| v. | : | Re Document No.: | 47 |
| | : | | |
| JOSE RODRIGUEZ, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

#### DENYING PLAINTIFF'S MOTION FOR SANCTIONS

### I. INTRODUCTION

Plaintiff Larry Bethel purchased an AC unit from the Home Depot retail store in Northeast Washington, D.C, on July 19, 2019. A month later, he discovered that a warrant had been issued for his arrest for stealing the product. Alarmed, Mr. Bethel voluntarily turned himself in and cleared the warrant. Mr. Bethel brings this lawsuit for the ordeal that he experienced. He alleges constitutional and common law claims against Jose Rodriguez, the investigating officer who allegedly secured the arrest warrant, Nelson Benton, a Home Depot employee who reported the incident to Officer Rodriguez, the D.C. Metropolitan Police Department ("MPD"), and Home Depot U.S.A. ("Home Depot").

Before the Court is Mr. Bethel's motion for sanctions under Federal Rule of Civil Procedure 37(e) against Defendants Home Depot and Mr. Benton (collectively, "Defendants") for spoliation of evidence. Mr. Bethel claims that Defendants: (1) lost Mr. Benton's incident report which described the events of the alleged shoplifting; and (2) failed to include native date and time stamps in the CCTV video recordings of the incident. For the reasons stated below, the Court denies Mr. Bethel's motion.

## II.  FACTUAL BACKGROUND

The facts of this case are recounted in the Court's previous rulings, so the Court will only provide the facts relevant to resolve this motion.  *See* Mem. Op., *Bethel v. Rodgriuez*, No. 20-cv-1940, at 1–4 (D.D.C. Apr. 9, 2021), ECF No. 18; Mem. Op., *Bethel v. Rodgriuez*, No. 20-cv-1940, at 2–4 (D.D.C. Mar. 31, 2022), ECF No. 51.  As alleged in the Second Amended Complaint, this case stems from an incident that occurred on July 19, 2019 at Home Depot.  Second Am. Compl. ("SAC") ¶ 16, ECF No. 11-2.  Mr. Bethel claims that he brought an air conditioning unit to the register, and after paying for it, noticed that the product was damaged.  *Id.* ¶ 18.  The cashier instructed him to pick out another unit.  *Id.*  He complied and, because the original unit had already been paid for, he was told he was free to leave with the new product.  *Id.* ¶ 19.  Mr. Bethel walked out of Home Depot and into the parking lot with the new AC unit and drove away in his gold-colored Toyota.  *Id.* ¶¶ 21, 23.

Meanwhile, Mr. Benton, who was working as an Asset Protection Specialist at this Home Depot location, was observing Mr. Bethel's activity in the store.[1]  *Id.* ¶¶ 15, 20.  Both parties agree that Mr. Benton saw Mr. Bethel leave the store with a new AC unit without separately paying for it.  *Id.* ¶ 21; Defs.' Opp'n Pl.'s Mot. Sanctions ("Opp'n") at 2, ECF No. 48.  Mr. Benton did not attempt to stop or detain Mr. Bethel.  SAC ¶ 21; Benton Dep. 43:12–20.[2]  Mr. Benton followed Mr. Bethel out of the store from a distance, saw him get inside his gold-colored Toyota, and recorded his license plate number.  SAC ¶ 23; Benton Decl. ¶ 5, ECF No. 48-9.  Mr.

---

[1] The parties disagree how long Mr. Benton surveilled Mr. Bethel, and whether he watched him in person or from surveillance video.  *Compare* Opp'n at 2 (Mr. Benton was personally on the floor and only saw Mr. Bethel take the new AC unit and walk out with it), *with* SAC ¶¶ 17–20 (Mr. Benton watched Mr. Bethel using a surveillance camera, from the moment he first entered the store until he left the store).

[2] Neither party appended the entirety of Mr. Benton's deposition.  Scattered excerpts can be found in attachments to Mot., ECF No. 47, Opp'n, ECF No. 48, and Pl.'s Reply Mot. Sanctions, ECF No. 49.

2

Benton then returned to the store and clipped the portion of the surveillance footage showing that Mr. Bethel selected the new AC unit and walked out of the store with it. Mot. Sanctions ("Mot.") at 3, ECF No. 47; Opp'n at 2. Mr. Benton testified that he also typed up an incident report as it was customary for him to "document or essentially record any incidents that happen at Home Depot." Benton Dep. 45:18–22.

Shortly after witnessing this incident, Mr. Benton reported the alleged shoplifting to MPD Officer Rodriguez and showed him the clipped video. Benton Decl. ¶ 7; Benton Dep. 50:14–19. Based on this information, Officer Rodriguez obtained an arrest warrant for Mr. Bethel on August 16, 2019. Ex. 9 to Mot., ECF No. 47-9;[3] Rodriguez Dep. 105:17–106:1, ECF No. 48-4. A few days later, MPD officers attempted to arrest Mr. Bethel at his residence, but he was not home. SAC ¶¶ 43–51. Upon learning of the arrest warrant, Mr. Bethel turned himself in at the police station. *Id.* ¶¶ 52–54.

According to Mr. Benton, "within a week" of the arrest warrant's issuance, he discovered an "additional video" from the morning of July 19, 2019 that showed Mr. Bethel paying for an AC unit at the register. Benton Dep. 34:22–35:11; Mot. at 6. Mr. Benton "called Officer Rodriguez immediately" with this information. Benton Dep. 54:11–15. Mr. Bethel's arrest warrant was subsequently cleared. *See* Ex. 13 to Mot., ECF No. 47-13 (MPD file showing "Void Arrest").

On October 1, 2019, Mr. Bethel's counsel sent Home Depot a notice and preservation letter. Ex. 14 to Mot., ECF No. 47-14. Mr. Bethel subsequently filed suit in July 2020. Compl., ECF No. 1. The matter proceeded to discovery, where Mr. Bethel requested Mr. Benton's incident report, as well as Home Depot's video recordings from the morning of the incident. *See*

---

[3] References to exhibit numbers correspond to the handwritten numbers on the attachments to Mr. Bethel's motion. ECF No. 47.

3

*generally* ECF Nos. 48-6, 48-7 (emails); Pl.'s Request Produc. Docs. ¶¶ 9–10, ECF No. 48-5. Defendants responded that they were "not in possession of an incident report prepared by Mr. Benton," but produced four videos and listed the date and time period each video captured. ECF Nos. 48-6, 48-7. Mr. Bethel, unsatisfied, asked Defendants to "identify each frame" of the videos with a "specific time and date." ECF No. 48-7. The parties then conferred by phone and Defendants explained that "the videos in question did not have date and time stamps." Opp'n at 6.

The parties appeared before the Court for a status conference on January 10, 2022. Tr. Status Conference ("Hearing Tr."), ECF No. 46. They continued to dispute the existence of Mr. Benton's incident report and whether Home Depot's video recordings possess native date and time stamps that need to be produced. *Id.* Mr. Bethel subsequently filed this motion for sanctions.

### III. ANALYSIS

#### A. Legal Standard

Rule 37(e) of the Federal Rules of Civil Procedure sets forth the inquiry that courts must conduct in deciding whether to impose sanctions for the failure to preserve electronically stored information ("ESI"). This misconduct, also known as spoliation, is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Nunnally v. D.C.*, 243 F. Supp. 3d 55, 73 (D.D.C. 2017) (citation omitted). Under Rule 37(e), when "[ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court may (1) "order measures no greater than necessary to cure the prejudice," or, only upon finding "that the

4

party acted with the intent to deprive another party of the information's use in the litigation," (2) "presume that the information was unfavorable to the party, instruct the jury that it may or must presume the information was unfavorable to the party, or dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e). The party alleging spoliation bears the burden of proof. *See, e.g.*, *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 43 (D.D.C. 2019).[4]

The path to Rule 37(e) sanctions has several steps. "To show that evidence was destroyed," the movant "must first show that the evidence existed." *Mannina v. D.C.*, 437 F. Supp. 3d 1, 8 (D.D.C. 2020); *see also Vasser v. Shulkin*, 2017 WL 5634860, at *3 (D.D.C. Nov. 22, 2017). Next, the Court must determine if spoliation occurred after the duty to preserve was triggered. A party has a duty to preserve potentially relevant evidence only "in [ ] anticipation . . . of litigation." Fed. R. Civ. P. 37(e); *see Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 170 (D.C. Cir. 2013) (duty exists whenever "litigation is reasonably foreseeable"); *Borum*, 332 F.R.D. at 45 (same). "The rule does not apply when the information is lost before a duty to preserve arises." Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2284.2 (3d ed.) (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment)). Finally, the movant must show that the spoliated evidence "cannot be restored or replaced through additional discovery." *Ball v. George Washington Univ.*, 2018 WL 4637008, at *1 (D.D.C. Sept. 27, 2018) (quoting Fed. R. Civ. P. 37(e)).

---

[4] Mr. Bethel only requests sanctions under Rule 37(e) and not under the Court's inherent authority. Mot. at 8–9. Defendants only discuss the standard for sanctions under the Court's inherent authority. Opp'n at 4–5. The Court will not consider sanctions under its inherent authority here because Rule 37(e) "specifically address[es] the applicability of sanctions for spoliation of ESI." *Borum*, 332 F.R.D. at 44 (declining to analyze sanctions under inherent authority for this reason).

Here, Mr. Bethel alleges that Defendants spoliated the incident report and the date and time stamps on the four videos. He requests various forms of sanctions to cure the spoliation. The Court will first address the incident report and then turn to the videos.

### B. Application

#### 1. Incident Report

At the outset, the parties dispute the existence of Mr. Benton's incident report. While Mr. Bethel claims that Defendants lost it, Home Depot claims that it never existed. The record better supports Mr. Bethel's position. Mr. Benton, who has been employed at Home Depot for sixteen years, testified that he "typed up an incident report" of the alleged shoplifting because it was within the "normal course of [his] duties" and "part of [his] job as an asset protection person" to "document or essentially record any incidents that happen at Home Depot." Benton Dep. 45:11–12, 46:1–12; Benton Decl. ¶ 3. Home Depot does not dispute that Mr. Benton witnessed the alleged shoplifting, nor the fact that it is customary for employees like Mr. Benton to type up incident reports. Instead, it argues that because it cannot find the incident report after a thorough search, it must not exist. Opp'n at 8. As further support for its position, Home Depot points out that Officer Rodriguez did not testify that he viewed Mr. Benton's incident report. Opp'n at 9 (citing Rodriguez Dep. 105:20–106:1). And according to Michael Yeagy, Home Depot's asset protection manager, incident reports submitted to the company's electronic database cannot be deleted. Yeagy Decl. ¶¶ 3–5, ECF No. 48-10.

The Court is not persuaded by Home Depot's position. Officer Rodriguez's testimony never discussed whether Mr. Benton created an incident report or whether it existed. And the incident report may be lost for a variety of reasons—for instance, it may not have been successfully uploaded to the company's electronic database. Based on the testimony of Mr.

6

Benton, an experienced employee who was at the scene and who routinely created incident reports in similar situations, for purposes of this motion, the Court is prepared to assume that Mr. Benton created an incident report that was subsequently lost.  *Cf. Vasser*, 2017 WL 5634860, at *3 (party's inability to locate "witnesses that remembered creating such documents" was relevant to determination that documents never existed).

Assuming that the incident report was lost, the Court must determine when Defendants' duty to preserve it was triggered.  Mr. Benton testified that "approximately within a week" after the issuance of the arrest warrant, he came to the realization that Mr. Bethel had paid for an AC unit and "immediately" called Officer Rodriguez with this information.  Benton Dep. 35:6–12, 54:11–15.  The arrest warrant was issued August 16, 2019.  Ex. 9 to Mot.  Thus, it is conceivable that sometime shortly after August 16, 2019, Defendants had reason to believe a lawsuit was coming their way for the ordeal they caused Mr. Bethel—and they would be right.  Setting hindsight aside, however, it is not clear that by mid to late August, litigation was "*reasonably* foreseeable" to Defendants, who had not heard anything from Mr. Bethel.  *Borum*, 332 F.R.D. at 45 (emphasis added); *see also, e.g.*, *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 708 (S.D.N.Y. 2017) ("[N]o case law supports the notion that an arrest invariably triggers a duty to preserve evidence of the arrest for potential civil litigation . . . ."), *aff'd sub nom. Tchatat v. City of New York*, 795 F. App'x 34 (2d Cir. 2019); *Hedgeye Risk Mgmt., LLC v. Heldman*, 412 F. Supp. 3d 15, 32 (D.D.C. 2019) (declining to sanction party's destruction of USB drives because "[a]t that time, no litigation was pending, none had been threatened, and there is no evidence that litigation was anticipated").  In any event, Mr. Bethel appears to hold Defendants' duty to preserve to a later date of October 1, 2019.  The motion for sanctions asserts that Home Depot had possession of the incident report "since it received the preservation and notice letter of October 1, 2019."

7

Mot. at 10; *see* Ex. 14 to Mot. (notice and preservation letter); Ex. 2 to Mot. (discovery letter "remind[ing]" Defendants that Mr. Bethel requested "information [to] be preserved" on October 1, 2019). The Court therefore finds that Defendants' duty to preserve the incident report was triggered on October 1, 2019.

Therefore, to prevail on his motion for sanctions, Mr. Bethel must show that Defendants lost the incident report after October 1, 2019. This he cannot do. Simply put, there is no evidence that Defendants lost Mr. Benton's incident report after this date—months after its creation. If anything, the record suggests it may have been lost earlier. Mr. Benton testified that he could not recall when he last saw the incident report. Benton Dep. 45:13–15. No one has been able to find the incident report despite a thorough search. *See* Opp'n at 8 (describing physical and electronic searches conducted by Mr. Benton, Mr. Yeagy, and Home Depot's claims administrator). If incident reports submitted to Home Depot's electronic database cannot be deleted, *see* Yeagy Decl. ¶ 5, then the incident report likely never made it onto the database. Given these facts, the Court has no basis to speculate that the incident report was lost months after its creation. The "burden of proof" is on Mr. Bethel to show that Defendants lost the incident report after they had a duty to preserve it, and he has not met it. *Borum*, 332 F.R.D. at 43. Accordingly, the Court declines to issue sanctions with respect to the incident report.[5]

### 2. Video Recordings

Mr. Bethel also seeks sanctions for Defendants' failure to include "running date and time" stamps as part of the four videos they produced. Mot. at 2. These four videos consist of

---

[5] Moreover, there is no indication that any incident report would contain information different from what Mr. Benton conveyed to Officer Rodriguez. Thus, there is no reason to conclude that the missing report would have been favorable to Mr. Bethel.

Home Depot's CCTV footage capturing in-store activity from 9:00 - 10:00am on July 19, 2019, the date of the incident in question. ECF No. 48-7.[6]

The parties dispute the existence of native date and time stamps on the four videos. Defendants assert that "the videos were produced as received and that the videos in question did not have date and time stamps." Opp'n at 6. According to Home Depot's third-party claims adjuster Erin Petre who was assigned to this incident, whenever she downloads CCTV footage from the "Verint system" software, as here, "the date and time stamp does not transfer with the video." Petre Decl. ¶ 6, ECF No. 48-8; *see also* Hearing Tr. 14:22–25 ("What I can confirm to you is that the way we received the videos from Home Depot is the way that we produced it to plaintiff's counsel, and it has neither a date nor time stamp on it."). Defendants explained at the status conference that while "the actual video does not have a time stamp on it . . . Home Depot is able to see what they've pulled it from." Hearing Tr. 6:19–25. Thus, Defendants provided Mr. Bethel with only the time periods (*i.e.*, 9:00 - 9:30am; 9:30am - 10:00am) that the videos capture, rather than videos with time and date stamps on each frame. ECF No. 48-7. Defendants maintain that the video productions complied with the rules of discovery, which only require that a party "produce documents as they are kept in the usual course of business or . . . organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i).

The Court finds Defendants' explanation sufficient to show that the native date and time stamps did not exist in the first place (other than on the Verint system). Mr. Bethel's only counterargument is that because he acquired a still photo in discovery that contained a date and

---

[6] Mr. Bethel never explains why having the stamps are important to the issue in controversy. Given the Court's familiarity with the facts disputed thus far, the Court is unaware of any dispute over the chronology of events whose resolution would depend on the availability of these time stamps. If such is the case, Mr. Bethel may make a request of Home Depot to view the tapes on the Verint system.

9

time stamp, the videos likewise should possess a similar stamp.  Mot. at 7 (citing Ex. 3 to Mot.).  Defendants respond that this was the case because Mr. Benton "manually" imposed the date and time stamp onto the photo.  Opp'n at 7 (citing Benton Decl. ¶ 6).  Mr. Bethel does not dispute this.[7]  And unlike the still photo, there is no evidence that Defendants manually imposed date and time stamps onto the videos but refused to produce them in that form to Mr. Bethel.  Thus, the Court finds that Mr. Bethel has not met his burden to "first show that the evidence existed." *Mannina*, 437 F. Supp. 3d at 8.

Even if Mr. Bethel could convince the Court that the date and time stamps were spoliated, the Court would not find any prejudice to cure.  When the Court inquired about the "importan[ce]" of this issue to Mr. Bethel, his counsel stated that he would not seek a deposition to investigate how the videos were created.  Hearing Tr. 18:10–19:6.  Mr. Bethel now summarily concludes that the absence of these stamps "would create confusion for a jury."  Mot. at 10.  But the parties do not dispute most of the salient facts of this case:  that on the morning of July 19, 2019, Mr. Bethel entered Home Depot, purchased an AC unit at the register and left it there, returned to the merchandise area to select another AC unit, and exited the store with the second AC unit without separately paying for it.  Opp'n at 7–8.  Given these facts, is not clear how a jury would be confused if they viewed the videos without the stamps.  Accordingly, Mr. Bethel's request for sanctions with respect to the videos is denied.[8]

---

[7] And the appearance of the time stamp on the photo indeed makes it appear as if it has been superimposed.

[8] It appears that none of the four videos captures Mr. Bethel's activities related to the original AC unit.  *See* Hearing Tr. 7:19–8:7 (counsel for Defendants acknowledging that Mr. Benton viewed additional video but stating that "that video is not in Home Depot's possession").  The Court will not address the issue of potential sanctions for a lost video, however, because Mr. Bethel's motion did not ask for sanctions on the basis that any videos were lost, only that the videos that were produced lacked date and time stamps.  *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the

10

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Sanctions (ECF No. 47) is **DENIED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 15, 2022                                            RUDOLPH CONTRERAS
                                                                             United States District Judge

---

legal arguments available to the parties.  To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (internal quotation marks and citations omitted)).  Regardless, again, there is no indication that this video, that corroborates Mr. Bethel's claim, would be any more favorable to him than what Mr. Benton has already testified to under oath.