**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LARRY BETHEL, | : | | |
| | : | | |
| *Plaintiff,* | : | | |
| | : | | |
| v. | : | Civil Action No.: | 20-1940 (RC) |
| | : | | |
| JOSE RODRIGUEZ, *et al*, | : | Re Document No.: | 72 |
| | : | | |
| *Defendants.* | : | | |

**MEMORANDUM OPINION**

**DENYING DEFENDANTS HOME DEPOT AND BENTON'S MOTION TO RECONSIDER**

## I.  INTRODUCTION

Plaintiff Larry Bethel bought an air conditioner at a Home Depot, U.S.A., Inc. ("Home Depot") store, but a store employee, Nelson Benton, incorrectly believed he stole the air conditioner and reported a theft to Officer Jose Rodriguez.  After this report, Officer Rodriguez obtained an arrest warrant for Mr. Bethel, and although Mr. Bethel was ultimately not arrested, he endured psychological distress in anticipation of a possible arrest.  Mr. Bethel then brought this action against Home Depot and Mr. Benton, plus Officer Rodriguez and the District of Columbia (together, the "District Defendants").[1]  Home Depot and Mr. Benton filed a motion for summary judgment, and separately, the District Defendants also filed a motion for summary judgment.  The Court granted in part and denied in part each motion, and it allowed Mr. Bethel's false arrest and defamation claims against the District Defendants, Home Depot, and Mr. Benton to go forward.

---

[1] The claims against Home Depot and District of Columbia are based on respondeat superior liability.  *See* 2d Am. Compl. ¶¶ 15, 135, 152, 181–85, ECF No 11-2.

Now, Home Depot and Mr. Benton move for the Court to reconsider its decision, contending that the Court failed to review video that supports their motion for summary judgment on all claims. Mr. Bethel opposes the motion, and the District Defendants have not made any filings. The Court has now reviewed the video evidence, which was not previously provided, and finds that the videos are relevant but does not change its conclusions. Thus, as explained further below, Home Depot and Mr. Benton's motion for reconsideration is denied.

## II. BACKGROUND

1. September 30, 2023 Memorandum Opinion

On September 30, 2023, the Court issued a memorandum opinion ("Sep. 30, 2023 Opinion") in this action. *See Bethel v. Rodriguez*, No. 20-cv-1940, 2023 WL 6388851 (D.D.C. Sept. 30, 2023). There, the Court granted in part and denied in part motions for summary judgment by (1) Home Depot and Mr. Benton and (2) the District Defendants.[2] *Id.* at *17. The Court granted summary judgment against Mr. Bethel on his claims for malicious prosecution, assault, negligence, and for punitive damages as a cause of action. *Id.* at *12–13, *17. However, the Court also allowed Mr. Bethel's claims for false arrest and defamation against Mr. Benton, Home Depot, and the District Defendants to go forward. *Id.* at *10–11, *15–16. This result stemmed from a "critical factual dispute [that] prevented the Court from reaching a definitive conclusion" about the events at issue. *Id.* at *8. Faced with competing testimony from Mr. Bethel versus Mr. Benton and Officer Rodriguez, the Court concluded it was appropriate to let a jury decide which side was more credible. *Id.* at *10–11, *15–16.

---

[2] Home Depot and Mr. Benton also moved to dismiss in part for failure to state a claim along with their motion for summary judgment, but the Court determined that this motion improper and proceeded fully at the summary judgment stage. *Bethel*, 2023 WL 6388851 at *5.

2

On October 25, 2023, Home Depot and Mr. Benton moved for reconsideration, arguing that the Court failed to consider probative video evidence and that the Court should have granted summary judgment in their favor on the false arrest and defamation counts. *See* Mem. Supp. Defs. Home Depot and Benton Mot. Reconsider ("Mot. Reconsider"), ECF No. 72. They delivered three video exhibits to the Court on a USB drive alongside their motion for reconsideration. *See* Defs. Home Depot and Benton Notice of Filing, ECF No. 73. Mr. Bethel opposes the motion and does not raise any issues of his own with respect to the Sep. 30, 2023 Opinion. *See* Pl. Opp'n Defs. Home Depot and Benton Mot. Reconsider ("Pl. Opp'n"), ECF No. 74. Home Depot and Mr. Benton did not file a reply. The District Defendants have not made any filings.

2. The Events of July 19, 2019 and the Video Evidence

Because the video evidence only pertains to a factual dispute over what happened when Mr. Bethel went to a Home Depot store on July 19, 2019, this discussion of the facts is limited to those events. The Court borrows in part from the Sep. 30, 2023 Opinion, and refers the reader there for a full discussion of the factual background. *See Bethel*, 2023 WL 6388851 at *1–4.

On July 19, 2019, Mr. Bethel went to Home Depot at approximately 9:30 a.m. District Defendants' Statement of Material Facts ("Dist. Defs. SOMF") ¶ 2, ECF No. 62-1; Pl.'s Dep. Transcript ("Pl. Dep. Tr.") 14:15, ECF No. 62-2. Mr. Bethel sought to buy an air conditioner because of recent hot weather. Dist. Defs. SOMF ¶ 2; Pl. Dep. Tr. at 14:6–16. He found an air conditioner he liked and purchased it. Dist. Defs. SOMF ¶ 2; Pl. Dep. Tr. at 14:6–15:13. According to Mr. Bethel, while he was still at the cashier station, he noticed the box was damaged, and the cashier told him to exchange it for another one. Pl. Dep. Tr. at 15:2–15:13.

Mr. Bethel went back and found a replacement air conditioner. *See id.* at 15:9–15:13, 30:20–31:7.

Here, the parties diverge on what happened next. Mr. Bethel testified that he took the replacement air conditioner "back to the register to let [the cashier] know that [he] had exchanged it and she said, okay, you're good." Pl. Dep. Tr. at 110:9–15. He elaborated that she "looked at" and "glanced at" the air conditioner box to make sure it was the same unit. *Id.* at 111:14–112:3. Mr. Bethel claimed that he "put [the box]" on the counter so that [the cashier] could see it was the [same] air conditioner I guess." *Id.* at 112:15–16. In short, Mr. Bethel agreed with the following summary:

> Q: You put the damaged unit on the shelf and then you took an undamaged unit, put it back in the cart, took it back over to the cashier, placed it on the counter, allowed her to view it, she said you're good, you put it back in the cart and left the store, is that correct?
> A: Yes, I did.
> Q: Was any part of what I restated in correct?
> A: That's the way I explained it to you.

*Id.* at 113:2–11. Mr. Bethel then left Home Depot. *Id.* at 14:6–15:13.

Mr. Benton, a member of Home Depot's asset protection staff at work that day, had a sharply different recollection of events. *See* Home Depot and Benton Mem. Supp. Mot. Summ. J. & Mot. Dismiss ("Home Depot & Benton Mem.") ¶ 2, ECF No. 60-1[3]; *see also* Benton Dep. Transcript ("Benton Dep. Tr.") at 27:12–15, ECF No. 62-3. According to Mr. Benton, he was watching Mr. Bethel from the sales floor, and he saw him place an air conditioner in his shopping cart and leave the store without going to the cashier. Benton Dep. Tr. at 29:7–19;

---

[3] Home Depot and Mr. Benton included a statement of facts as part of the memorandum supporting their motion for summary judgment. When the Court uses the paragraph symbol, ¶, in citing to Mr. Benton and Home Depot's memorandum, it is referring to the numbered paragraphs starting on the fourth page of the memorandum. In addition, because the memorandum is not paginated, the Court uses the page numbering as listed by ECF.

31:18–32:7, 59:18–60:2.  When asked at his deposition if he conducted any investigation to determine if Mr. Bethel had paid for the air conditioner and whether he had a receipt, Mr. Benton stated that "[a]t the time I observed Mr. Bethel, he did not pass or go to a cashier."  *Id.* at 59:18–60:2.

Mr. Benton followed Mr. Bethel as he left the store and saw him put the air conditioner in a car.  *Id.* at 32:13–18; 41:8–15.  Mr. Benton recorded the license plate number of the car.  *Id.* at 32:13–18.  Mr. Benton did not approach or speak to Mr. Bethel at any point.  *Id.* at 106:22–109:3.  Mr. Benton then returned inside Home Depot and analyzed a video clip of Mr. Bethel inside the store, which Mr. Benton testified showed that Mr. Bethel took an air conditioner and left the store without paying for it.  *Id.* at 31:1–6; 32:13–18; 51:20–52:2; 101:4–15.  Mr. Benton testified that he did not speak to any cashiers about the possible theft, and that his practice is to not conduct such interviews, because it is a "conflict."  *Id.* at 112:19–113:10; *see also id.* at 60:10–11 ("We do not speak to store associates about any cases or thefts or customers of that nature.").

Based on the video clip and his first-hand observation, Mr. Benton testified that he concluded that Mr. Bethel stole the air conditioner, and he wrote an incident report.  *Id.* at 32:13–18, 45:1–9; 46:9–12; 47:6–14.  He contacted Officer Jose Rodriguez, a member of the Metropolitan Police Department ("MPD"), and shared the incident report and video clip with him.[4]  *Id.* at 43:21–44:1, 45:1–9; 50:14–19; 51:20–52:2; 53:6–11; *see also* Rodriguez Dep.

---

[4] Officer Rodriguez also worked as a part-time contractor for Home Depot to "keep customers safe" and prevent theft.  Rodriguez Dep. Tr. at 50:5–17, 51:18–52:2.  When working at Home Depot, he was still on duty as a sworn MPD officer.  *Id.* at 50:18–21.  Officer Rodriguez and Mr. Benton knew each other through their work at Home Depot.  *See id.* at 50:5–7; Benton Dep. Tr. 26:18–27:1.  Officer Rodriguez was not a subordinate to Mr. Benton and did not report to him.  Benton Dep. Tr. 102:7–9.  Neither Officer Rodriguez nor Mr. Benton could

Transcript ("Rodriguez Dep. Tr.") at 104:13–105:16, ECF No. 63-1.  According to Officer Rodriguez, he reviewed the incident report and video clip, and believed that the video corroborated Mr. Benton's version of events.  Rodriguez Dep. Tr. at 71:7–73:12; 105:14–16, 105:17–106:1.  Officer Rodriguez testified that Mr. Bethel "never went to a cashier." *Id.* at 106:22–107:4.  Officer Rodriguez also testified that at this point he determined there was probable cause to seek an arrest warrant.  *Id.* at 105:17–106:1.

    The following day, July 20, 2019, Officer Rodriguez completed a police report that repeated the information he received from Mr. Benton; the report mentioned that the event was captured on video.  *See* Rodriguez Police Rep., Dist. Defs. Mem. Ex. 4, ECF No. 62-4.  On August 16, 2019, Rodriguez's Affidavit in Support of an Arrest Warrant was approved by the Assistant United States Attorney assigned to the case.  Rodriguez Aff. in Supp. of an Arrest Warrant, Dist. Defs. Mem. Ex. 5, ECF No. 62-5; Dist. Defs. SOMF ¶ 19.  The affidavit recounts Mr. Benton's description of events but does not mention that a video clip exists or that Officer Rodriguez watched it.  *See* Rodriguez Aff.; *see also* Rodriguez Dep. Tr. 71:10–73:15.  Also on August 16, 2019, Officer Rodriguez swore out a complaint against Mr. Bethel for second-degree theft, in violation of D.C. Code 22, §§ 3211, 3212(b).  *See* Rodriguez Compl. and Arrest Warrant, Dist. Defs. Mem. Ex. 6, ECF No. 62-6; Dist. Defs. SOMF ¶ 19.  A warrant for the arrest of Mr. Bethel was issued on August 16, 2019.  Dist. Defs. SOMF ¶ 20.  Mr. Benton and Officer Rodriguez later discovered an additional video that showed Mr. Bethel paying for an air conditioner, before he swapped it for the undamaged unit, and withdrew the warrant for his arrest.  *Bethel*, 2023 WL 6388851, at *3–4.  Unfortunately, as explained in the Court's prior

---

recall if Officer Rodriguez was working at Home Depot on July 19, 2019. *See id.* at 27:17–20; Rodriguez Dep. Tr. 61:6–8.

6

opinion, this discovery came only after Mr. Bethel had been informed that there was a warrant for his arrest. *See id.*

Notably, as the current motion makes clear, there are three videos of what happened on July 19, 2019, after Mr. Bethel placed the replacement air conditioner into his cart. *See* Home Depot & Benton Mem., Ex. G at 28:08–30:04; Home Depot & Benton Mem., Ex. H at 0:40–1:06; Home Depot & Benton Mem., Ex. I at 0:00–1:13.[5] The videos are poor quality and come from three different fish-eye lens cameras mounted on the store's ceiling, covering slightly different areas of the store although with overlap. The most helpful video is Ex. I, so the Court will rely on that video, with the caveat that the other two videos are similar. The video shows Mr. Bethel (wearing a purple shirt) with a shopping cart that contains the replacement air conditioner, and he pauses for about a minute inspecting his cart before moving forward. *See* Ex. I at 0:00–1:13. He approaches a cashier (who is wearing a pink hat) standing near a point-of-sale station and speaks to her. *Id.* He does not remove the air conditioner from his cart. *Id.* The cashier appears to respond to him. *Id.* The interaction lasts around 5 seconds. *Id.* Despite this short timeframe, and although the videos are blurry, Mr. Bethel appears calm during the interaction and does not seem to be in a rush. *Id.* After this brief exchange, Mr. Bethel turns away from the cashier and does not exit the store through the doors closest to him, instead taking a right turn in a direction parallel to the exit until he leaves the view of the camera. *Id.*

The video evidence departs from the testimony offered by all three relevant individuals. It is inconsistent with Mr. Benton's testimony, who said that he watched Mr. Bethel in person and on video, and saw Mr. Bethel place an air conditioner in his cart and leave the store without

---

[5] The Court cites these videos as they are referenced, briefly, in Home Depot and Mr. Benton's motion for summary judgment. As explained elsewhere in this opinion, these exhibits had not been presented to the Court when it decided the motion.

passing or going to a cashier.  Benton Dep. Tr. 59:18–60:2.  It also contradicts Officer Rodriguez's testimony, who said he watched a video that corroborated Mr. Bethel's version of events, and that Mr. Bethel did not go to a cashier.  Rodriguez Dep. Tr. 106:22–107:4.  Finally, the video evidence does not match Mr. Bethel's testimony: he did not remove the air conditioner from his cart for the cashier to inspect, and the interaction was much shorter than what he described at his deposition.  Pl. Dep. Tr. 113:2–11.

### III.  LEGAL STANDARD

#### 1.  Federal Rule of Civil Procedure 54

"Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case." *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)).  Rule 54(b) provides that any order or decision that does not constitute a final judgment "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  A court has "inherent power to reconsider an interlocutory order 'as justice requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985)).  In determining whether reconsideration is appropriate under Rule 54(b), courts may consider "whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law occurred." *In Defense of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (quoting *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).  "Errors of apprehension may include a Court's failure to consider 'controlling decisions or data that might reasonably be expected to alter the

conclusion reached by the court.'" *Singh*, 383 F. Supp. 2d at 101 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

### 2.  Federal Rule of Civil Procedure 56

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The inquiry under Rule 56 is guided by "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

One of the principal purposes of summary judgment is to determine whether there is a genuine need for trial by disposing of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. "[T]he non-movant 'may not rest upon mere allegation or denials . . . ' but must [instead] present 'affirmative evidence' showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (quoting *Anderson*, 477 U.S. at 256). In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475

F.3d 360, 363 (D.C. Cir. 2007).  Inferences must be analyzed in the light most favorable to the non-movant.  *See Anderson*, 477 U.S. at 255.  But conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

Finally, and of particular relevance here, "in a case where the court has the benefit of video evidence, the Supreme Court has stated that courts deciding summary judgment motions should 'view[] the facts in the light depicted by the videotape[.]'"  *Armbruster v. Frost*, 962 F. Supp. 2d 105, 110 (D.D.C. 2013) (quoting *Scott*, 550 U.S. at 381).

### IV.  ANALYSIS

As an initial matter, the Court notes that rather than addressing the video evidence, Mr. Bethel's opposition brief mainly contends that the Court's Sep. 30, 2023 Opinion (and order) was a "final judgment" and that the motion for reconsideration is not properly brought under Rule 54(b).  Pl. Opp'n at 6–7.  All that the Court has to say about this argument is that it is evidently incorrect: the Sep. 30, 2023 Opinion "adjudicate[d] fewer than all the claims" put forth by Mr. Bethel and thus "is subject to revision at any time" under Rule 54(b).  Fed. R. Civ. P. 54(b).

The Court also observes that much of the Sep. 30, 2023 Opinion is not at issue in the current motion for reconsideration.  Thus, the Court will solely discuss whether the video evidence alters its assessment of Mr. Bethel's surviving claims for false arrest and defamation

Home Depot and Mr. Benton are correct that the store video is relevant to the Court's decision on those claims.  It should have been provided to the Court previously, but was not, and it was mentioned only in passing in the summary judgment briefing.  Now that the videos are available, the Court sees that they portray events that depart from the recollection of *all* relevant

individuals in this litigation. Given that inconsistency, the Court continues to believe that a factual issue remains for trial, and it will deny the motion for reconsideration.

### A. The Court Did Not Receive the Videos of Mr. Bethel at Home Depot, and they are Relevant

The Court's summary judgment opinion stated that "[u]nfortunately, the video [of Mr. Bethel at Home Depot] is not part of the factual record, and Mr. Benton testified that he did not know where the video is today." *Bethel*, 2023 WL 6388851, at *2 n.3 (citing Benton Dep. Tr. 32:19–22). Indeed, the Court never received any such videos.

According to counsel for Home Depot and Mr. Benton, they did not produce the videos in an effort to comply with Local Civil Rule 5.4(e)(1). Mot. Reconsider at 2. That rule provides in part that

> Any document, exhibit, or attachment, including sealed material, that (A) is not in a format that readily permits electronic filing, such as a map, chart, or DVD, or (B) is illegible when scanned into electronic format, is to be maintained in the possession of the attorney or *pro se* party responsible for the filing. Such a filing shall be made available for a party or the Court and must be identified in a Notice of Filing filed with the Court. A document or item filed pursuant to this subsection shall be served, if it is necessary to serve it, by mail or by hand delivery, unless the parties have otherwise agreed.

LCvR 5.4(e)(1). Home Depot and Mr. Benton's counsel further explain that

> In preparation of the filing and to gain clarity as to when Defendants should file a Notice of Filing and the CCTV with the Court, undersigned counsel's office contacted the Clerk of the Court on December 12, 2022, and was advised that the CCTV video exhibits should not be submitted and should be held until requested by the Judge. Given the instruction from the Clerk of the Court, Defendants did not file the Notice of Filing or produce the CCTV video exhibits.

Mot. Reconsider at 2. Although the Court does not call into question the accuracy of these statements, it is not familiar with the guidance purportedly provided by the Clerk of the Court. In analogous cases, parties regularly file a Notice of Filing along with their motions for summary judgment and inquire to the Court's chambers about the appropriate format for providing video

11

exhibits.  In fact, in this very case, the District Defendants provided a notice on the docket that "[t]he BWC video will be submitted directly to the Court with the courtesy copy of the District Defendants' Motion for Summary Judgment" and sent that video to the Court, which the Court then reviewed and described in the summary judgment opinion.  District Defs.' Mot. Summ. Judgment, Ex. 7, ECF No. 62-7; *see Bethel*, 2023 WL 6388851, at *3.

Still, Home Depot and Mr. Benton's counsel state that their "motion for summary judgment "included a footnote advising that . . . the video exhibits would be produced upon request." Mot. Reconsider at 2.  Again, although that footnote stated that "[p]ursuant to the local rules, all physical video exhibits will be produced to the court upon request," Home Depot and Benton Mem. at 3 n.1, the Local Rules do not compel such an approach and the Court believes that there must have been a misunderstanding or a mistake at some point in counsel's consultation with the Clerk of the Court.  Regardless, it is true that "[t]he video exhibits were never requested and thus never produced by Defendants." Mot. Reconsider at 2.

In candor, the Court did not recognize that it should request the videos because the parties said virtually nothing about them.  Home Depot and Mr. Benton cite the videos just twice, in two consecutive paragraphs of their statement of undisputed material facts.  Home Depot & Benton Mem. ¶¶ 8–9.  The videos are not described in the text and are included only as additional citations, after citations to Mr. Benton's deposition transcript.  The videos are never mentioned anywhere else in the memorandum supporting their motion for summary judgment, and never mentioned in their reply brief.  That omission is odd given that Home Depot and Mr. Benton recognized elsewhere the importance of video that conflicts with deposition testimony.  *See* Home Depot & Benton Reply Pl. Opp'n at 3, ECF No. 68 (noting that "[s]ignificantly, the entire interaction with Mr. Spann and the officers was captured by video" and citing to that video as a

12

rebuttal to Mr. Bethel's testimony). Even stranger is that the District Defendants and Mr. Bethel *also* never discussed the Home Depot videos anywhere in their summary judgment filings. Mr. Bethel only alluded to the videos when he repeated the two paragraphs where Home Depot and Mr. Benton cite the videos, saying only that he "dispute[d]" the contents of those paragraphs. Pl. Opp'n Home Depot & Benton at 26. The Court is perplexed that all parties saw fit to disregard video evidence about what happened in favor of dueling deposition testimony, particularly because at the summary judgment stage, the Court must "eschew making credibility determinations," *Czekalski*, 475 F.3d at 363, and should "view[] the facts in the light depicted by the videotape," *Scott*, 550 U.S. at 381.

In summary, the videos are "data that might reasonably be expected to alter the conclusion reached by the court." *Singh*, 383 F. Supp. 2d at 101 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Thus, the Court will revisit its analysis with a better understanding of the events at issue.

### B.  Mr. Bethel's False Arrest Claims

Because the Court has already extensively discussed the standard for false arrest, it will not repeat that framework. *Bethel*, 2023 WL 6388851, at *6–10. It also will not re-evaluate its conclusion that there was a material factual dispute whether Mr. Bethel was eventually arrested when he went to a police station. *Id.* at *9–11. Instead, the Court focuses on the proposition that Home Depot and Mr. Benton could be liable for any such arrest because someone "who knowingly gives false information to a police officer necessarily interferes with the intelligent exercise of the officer's independent judgment and discretion and thereby becomes liable for a false arrest that later occurs." *Id.* at *8 (quoting *Amobi v. District of Columbia Dep't of Corr.*, 755 F.3d 980, 991 (D.C. Cir. 2014)).

In its Sep. 30, 2023 Opinion, the Court observed that Mr. Benton and Mr. Bethel offered sharply different accounts of what transpired at the Home Depot:

> one critical factual dispute prevents the Court from reaching a definitive conclusion.  Mr. Bethel contends that rather than leaving the store without going to a cashier, he returned to the same cashier that sold him the initial unit, and the cashier confirmed that Mr. Bethel was free to leave with the substituted and undamaged unit.  *See* Pl. Dep. Tr. at 30:20–31:7, 111:2–16, 112:17–113:11.  This narrative is fundamentally incompatible with Mr. Benton's testimony that he watched Mr. Bethel place an air conditioner into his cart and leave the store without stopping by any points of sale or speaking to a cashier.  *See* Benton Dep. Tr. at 29:7–19; 31:18–32:4, 59:18–60:2.  Either Mr. Bethel picked up an air conditioner and headed directly out of the store, or he returned to a cashier to confirm that he was merely swapping out a purchased product.  To take Mr. Bethel's testimony as true—and the Court must construe the evidence favorably against Mr. Bethel, as non-movant—would indicate that Mr. Benton was untruthful or recklessly incorrect about Mr. Bethel's actions in his report and his conversation with Officer Rodriguez.  Mistakes happen, but if Mr. Bethel stopped and spoke with a cashier, it would be far beyond an ordinary mistake for Mr. Benton to watch Mr. Bethel in real-time and on a video but still somehow tell Officer Rodriguez that Mr. Bethel picked up an air conditioner and quickly left the store without passing any registers.

*Bethel*, 2023 WL 6388851, at *8.  With the benefit of the video evidence, the Court concludes that Mr. Benton's testimony does not align with actual events.  Mr. Bethel did stop by a cashier, and additionally, the video evidence does not capture him leaving the store or even clearly heading toward an exit.  *See* Ex. I at 0:00–1:13.  To be sure, Mr. Bethel's testimony that he removed the air conditioner from his cart for the cashier to examine was also inaccurate.  *See id.*  Moreover, Mr. Bethel's interaction with the cashier was far too brief for him to have paid at that moment, which supports Mr. Benton's conclusions.  *See id.*  The truth falls somewhere between Mr. Bethel and Mr. Benton's tellings.  Even with the video evidence, there is still uncertainty: the Court does not know what Mr. Bethel and the cashier said to each other.

In highlighting why the course of events is important to the outcome of the motion, the Court previously explained that

> It is material whether Mr. Bethel left the store immediately or stopped to speak with a cashier. In the first scenario, it would be plausible to assume Mr. Bethel stole the air conditioner. The second scenario, by contrast, would lead to other questions about what Mr. Bethel said to the cashier and why the cashier allowed him to proceed out of the store without making an objection. Moreover, while in the first situation there would be no cashier to speak with at all, the second situation naturally invites at least a brief inquiry with the cashier about what occurred. Although Mr. Benton testified that he does not speak to cashiers about possible theft, apparently pursuant to a Home Depot policy that addresses potential conflict of interest, the Court sees no reason to defer to that practice when assessing whether Mr. Benton acted in good faith. *See* Benton Dep. Tr. at 60:10–11, 112:19–113:10. Such an approach may well be desirable for Mr. Benton, and for the store, while simultaneously falling short of a good faith investigation in some cases. The Court recognizes that even if Mr. Benton did observe Mr. Bethel stop by a cashier, he could still possibly conclude that Mr. Bethel was engaged in theft. But making that determination would be much more complicated than if Mr. Bethel made a beeline for the exit; the two situations are substantially different and substituting one for another would conceal a material fact.

*Bethel*, 2023 WL 6388851, at *8.

Here, the Court observes that Mr. Benton may have still believed Mr. Bethel was engaged in theft even though he spoke with a cashier. But the record does not contain sufficient evidence *why* Mr. Benton would have held that belief. Perhaps Mr. Benton believed that the cashier was somehow facilitating the theft, or that Mr. Bethel went to the cashier for some unknown reason before walking off and then eventually leaving the store without paying. Either way, Home Depot apparently did not allow Mr. Benton to talk with cashiers about suspected theft. Benton Dep. Tr. 60:10–11. But that purported policy preventing loss prevention employees like Mr. Benton from speaking with cashiers does not automatically insulate Home Depot and Mr. Benton from liability here. If they wish to rely on this defense, they should present a more fulsome presentation of the policy, the justification for it, and an argument for why it should not lead to liability if that policy leads to a theft accusation against an innocent customer. Given how quickly a conversation with the cashier might have resolved the confusion at issue here (or a conversation with Mr. Bethel, for that matter), the Court cannot find that there

15

is no material dispute as to whether Mr. Benton acted recklessly when he accused Mr. Bethel of theft.

Finally, the Court also notes that Home Depot and Mr. Benton contend that the Sep. 30, 2023 Opinion "made some slight mischaracterizations regarding the parties' contentions." Mot. Reconsider at 4. They say Mr. Benton does not contend that Mr. Bethel 'immediately,' 'quickly,' and/or made a 'beeline' for the exit after placing the AC unit inside his cart." *Id.* (quoting *Bethel*, 2023 WL 6388851 at *8). The Court agrees that those quoted words convey an element of speed that is not present in Mr. Benton's deposition testimony or briefing. But they were intended to describe Mr. Benton's contention that Mr. Bethel left the store without stopping by or going to a cashier, which has now been revealed as inaccurate.

For similar reasons as with Home Depot and Mr. Benton, the Court will not change its conclusions about the false arrest claims against Officer Rodriguez and the District, who could possibly be liable for false arrest if Officer Rodriguez's affidavit for Mr. Bethel's arrest "contain[ed] a deliberately or recklessly false statement." *Lane v. District of Columbia*, 211 F. Supp. 3d 150, 173 (D.D.C. 2016) (alteration in original) (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)). First of all, the District Defendants have not filed a motion to reconsider. In any event, because the video evidence is highly relevant to the Court's previous conclusions, it revisits the claims against the District Defendants *sua sponte*. As the Court observed previously,

> If Officer Rodriguez reviewed the video of Mr. Bethel, as he said he did, *see, e.g.*, Rodriguez Dep. Tr. at 71:7–73:12, it is highly doubtful that he could make an honest error as to whether Mr. Bethel directly left the store or stopped to present the air conditioner to a cashier. Officer Rodriguez's testimony also relied on the fact that it would be hard to discern whether Mr. Bethel purchased the air conditioner, testifying that it would have been difficult to identify a record of his purchase because Home Depot has over "30 registers in that store" and "you can never point to who bought what because [the receipts] have no names." *Id.* at 107:11–15. That point would be inapposite if the video showed Mr. Bethel

16

> stopping at a register before leaving; speaking to the cashier would be a natural next step.

*Bethel*, 2023 WL 6388851, at *11. The video does show Mr. Bethel stopping at a cashier, but for a short time and not at a register. Nevertheless, that directly contradicts Officer Rodriguez's testimony that Mr. Bethel "never went to a cashier" making it unnecessary to interview any cashiers. Rodriguez Dep. Tr. at 106:22–107:4. That also raises a problem with Officer Rodriguez's agreement at his deposition that he "review[ed]" "video that corroborated Benton's version of events and what he reported to [Officer Rodriguez]." *Id.* at 105:14–16. Thus, as with Mr. Benton, the video evidence does not change the Court's conclusion that there remains a factual issue for trial. Namely, Officer Rodriguez has not explained why after reviewing the video, he would have inaccurately stated that it aligned with Mr. Benton's report, and why he would have found it unnecessary to speak with the cashier.

Ultimately, the parties have not presented a sufficient factual basis for the Court to resolve these claims at summary judgment. Mr. Benton and Officer Rodriguez's deposition testimony goes to their state of mind on July 19, 2019, but they have not provided evidence or arguments to explain their behavior in light of what actually happened. As the Court has already stated, the fact that Mr. Benton and Officer Rodriguez later moved to withdraw the arrest warrant indicates that the accusation against Mr. Bethel was a mistake. *Bethel*, 2023 WL 6388851, at *9. But on this record, and at this stage of litigation, the Court cannot find that Mr. Benton and Officer Rodriguez are entitled to summary judgment on the false arrest claims, and it will not reconsider its conclusions in the Sep. 30, 2023 Opinion.

### C. Mr. Bethel's Defamation Claims

The Court refrains from repeating the full legal framework of a defamation claim, and instead focuses on whether Mr. Benton's and Officer Rodriguez's accusations against Mr. Bethel

fall outside the common interest privilege because they were made "without just cause or excuse, with such a conscious indifference or reckless disregard as to [the] results or effect upon the rights or feeling of others as to constitute ill will." *Moss v. Stockard*, 580 A.2d 1011, 1025 (D.C. 1990) (quoting *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C. 1983)); *see also Hall v. District of Columbia*, 867 F.3d 138, 149 (D.C. Cir. 2017) (same, in the context of reporting a crime).  There is no malice if "the defendant has done no more than to fail to undertake a reasonable inquiry as to the truth of the assertion prior to publication—conduct amounting to ordinary negligence." *Moss*, 580 A.2d at 1025*; see also Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 624 (D.C. Cir. 2023) ("[W]hile a defendant is 'presumed' to act with 'pure motives' in making a conditionally privileged statement, a plaintiff may 'rebut this presumption' through a showing of malice.") (quoting *Ford Motor Credit Co. v. Holland*, 367 A.2d 1311, 1314 (D.C. 1977)).  And "while the existence of the privilege is a question of law for the court, whether it was abused by the defendant, is a question of fact for the jury."  *Mosrie*, 467 A.2d at 477; *see also Oparaugo v. Watts*, 884 A.2d 63, 82 (D.C. 2005) ("Whether a person acts with malice is ordinarily a question of fact for the jury.").

As it pertains to Mr. Bethel's defamation claim against Mr. Benton, the Court's Sep. 30, 2023 Opinion observed that

> While there is no discernible motive for why Mr. Benton would intentionally make a false accusation against Mr. Bethel—and his later activity in reporting the second video to Officer Rodriguez seems to rebut any such possibility—the record contains contradictory testimony from Mr. Benton and Mr. Bethel about the events on July 19, 2019.  To take Mr. Bethel's narrative as accurate would mean to find Mr. Benton's inaccurate, and vice versa.  And if Mr. Benton said that Mr. Bethel left the store without paying for the air conditioner, despite witnessing him go to a cashier, that statement very well may satisfy the malice standard.

*Bethel*, 2023 WL 6388851, at *15.  Following from the video evidence, it is true that after watching Mr. Bethel go up to the cashier, "Mr. Benton failed to intercept Mr. Bethel to ask for a

receipt and failed to follow up with the cashier about the encounter." *Id.*  To be sure, the video evidence is consistent with the possibility that Mr. Benton's actions and accusation against Mr. Bethel were just an error, and a defendant still falls within the common interest privilege when "[he] has done no more than to fail to undertake a reasonable inquiry as to the truth of the assertion prior to publication—conduct amounting to ordinary negligence." *Moss*, 580 A.2d at 1025.  Indeed, if the record evidence showed Mr. Benton describing events in a manner that matched the video and accounted for his behavior in that context, the outcome here may be different.  As it is, however, Mr. Benton's testimony is sufficiently inconsistent with the video evidence to sustain a factual issue of whether he acted with "conscious indifference or reckless disregard." *Id.*; *see Hall,* 867 F.3d at 149 (concluding that whether the defendant acted with malice should be resolved at trial).  Consequently, for similar reasons as with the false arrest claims, the Court concludes that it is still not appropriate to enter summary judgment for Home Depot and Mr. Benton on the defamation claim.

    The Court will also sustain its conclusions regarding the defamation claim against the District Defendants.  There is still a material issue as to why Officer Rodriguez accused Mr. Bethel of theft despite purportedly watching a video that did not match Mr. Benton's account of events.  While it may not be difficult for Officer Rodriguez to show that his statements were a good faith interpretation of the video evidence and the report from Mr. Benton—given "Officer Rodriguez's efforts to withdraw the warrant after being informed of the second video," *Bethel*, 2023 WL 6388851, at *16—he has not done so yet, especially considering that his deposition testimony conflicts with the videos.

    In conclusion, the Court agrees with Home Depot and Mr. Benton that it was appropriate to revisit the Sep. 30, 2023 opinion in light of the video evidence.  But the agreement ends there.

With video evidence revealing that Mr. Benton, Officer Rodriguez, and Mr. Bethel all offered inaccurate deposition testimony, and the corresponding factual issues that remain, the Court sees no reason to change the outcome.  Therefore, Home Depot and Mr. Benton's motion for reconsideration is denied.

## V.  CONCLUSION

For the foregoing reasons, Defendants Home Depot and Nelson Benton's Motion to Reconsider (ECF No. 72) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 19, 2024                                                                  RUDOLPH CONTRERAS
                                                                                                      United States District Judge